# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 95-KA-01225-SCT

*FRELESSIES SMITH a/k/a FRELESSIES MICHELLE SMITH a/k/a FELICIA*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/12/95 |
| TRIAL JUDGE: | HON. ROBERT LOUIS GOZA, JR. |
| COURT FROM WHICH APPEALED: | RANKIN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHRIS N. K. GANNER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | RICK MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/11/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/6/98 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. Here, the appellant challenges the factual sufficiency of the evidence, the propriety of allowing her co-conspirator to testify regarding previously committed crimes and her prosecution and conviction following the forfeiture of her vehicle. We conclude that there is sufficient evidence, no error in admitting the co-conspirator's testimony and no double jeopardy violation. Therefore, we affirm the lower court's disposition of this matter.

### I.

¶2. On September 07, 1994 at the Jackson International Airport in Jackson, Mississippi, officers with the Jackson Police Department detained Syreeta Foster under the suspicion that she was in possession of illegal drugs. Foster consented to a search of her luggage, which revealed seven compressed bundles of marijuana weighing approximately 5.2 kilograms or ten to eleven pounds. Foster was advised of her *Miranda* rights, but she waived those rights and gave an oral statement. She told the officers that she had flown from El Paso, Texas to meet with the appellant, Frelessies Smith. Smith was scheduled to take Foster to Smith's house where they were to call the drug source

in Texas, wait at Smith's house for a return local phone call from an unidentified male and then deliver the marijuana to the unidentified male at a previously determined Jackson location in exchange for money.

¶3. Based upon the information provided by Foster, Investigator Larry Iles of the Hinds County Sheriff's Department went to the waiting area of the airport and approached a young woman fitting Foster's description of Smith and who told the officer that her name was, in fact, Frelessies Smith. Iles then took Smith into the room with Foster who positively identified Smith as the person scheduled to pick her up and assist her in delivering the marijuana. Smith was taken to another room and informed of her *Miranda* rights. She waived her rights and agreed to give a statement to the officers.

¶4. Smith admitted that she was there to pick up Foster. She further stated that she was supposed to take Foster to her house so that they could make a phone call to Texas. After the call to Texas, Smith and Foster would receive a local phone call after which Smith would take Foster to the Sack & Save grocery store on Interstate 55 North where they were scheduled to meet an unidentified male in a large vehicle. Once there, Foster would give the man the marijuana in exchange for a predisposed amount of money and then Smith would bring Foster back to her house to stay until Foster returned to El Paso.

¶5. At trial, Officer Iles testified that Smith initially claimed she did not know that Foster was transporting marijuana, but later admitted she was aware there was marijuana in the bag and that the trip concerned drugs. She also told the officer that she had known Foster for several weeks and that Foster had stayed overnight at her home previously. Smith admitted that the telephone number of the drug source in Texas could be found on a telephone bill in the glove compartment of her vehicle. She consented to a search of her vehicle, which revealed a copy of a telephone bill which Smith confirmed as containing the source's phone number. During the discussion at the airport, Smith further admitted that she generally received $1,000 for her role as a taxi service, whereby she provided Foster transportation from the airport to the site of the exchange and back to the airport plus a safe location for phone calls to be made and received.

¶6. Foster testified for the State. She told the jury she had known Smith since July 1994, about two months before the incident that led to the instant matter. Foster admitted that she and Smith had collaborated to transport and deliver marijuana from Texas to Mississippi five other times using the exact *modus operandi*. Counsel for Smith objected to Foster's testimony about previous drug deals on the basis of relevancy and Rule 404(b). The trial court overruled the objection, later ruling that the testimony was admissible to show knowledge, motive, intent, design, and concluding that it was highly relevant since Smith was charged not with possession, but with conspiracy.

¶7. Foster also stated that, of the five occasions she delivered marijuana from Texas to Mississippi, she stayed with Smith three of those times. The other times she stayed in a hotel. Foster personally observed Smith being compensated for her assistance in the drug deals and personally paid Smith $1,000 on one occasion. According to Foster, the amounts given to Smith ranged from $500 to $1,000. Smith's boyfriend -- identified by Foster as the drug source in Texas -- arranged Smith and Foster's first meeting in July 1994. Smith knew, according to Foster, the nature of Foster's visits to Mississippi and the nature of her assistance.

¶8. Upon examining the telephone bill recovered from Smith's vehicle, Foster counted nineteen calls made from Smith's home to Foster's home. She also counted nine calls made to the drug source -- Smith's boyfriend. Finally, Foster explained her reason for testifying -- so that it would not "seem like [Foster took] advantage of her [referring to Smith]."

¶9. Smith testified in her own defense. She maintained that she met Foster through her boyfriend, that she did not know her boyfriend and Foster were drug dealers and that they set her up.

¶10. The next day before trial reconvened counsel for Smith moved to dismiss the criminal proceeding, arguing that Smith had been subjected to double jeopardy due to the prior forfeiture of her vehicle and the instant prosecution for conspiracy to possess. The trial court denied the motion, concluding that there was no double jeopardy violation on these facts as Smith waived her right to contest the forfeiture and since the forfeiture was not a penalty.

¶11. Based upon the preceding evidence, the jury found Smith guilty as charged in the indictment, and the trial court sentenced her to ten years imprisonment with five years suspended. Smith did not file a motion for new trial or a motion for judgment notwithstanding the verdict. She did, however, give timely notice of appeal and presently appeals to this Court for relief.

## II.

¶12. Smith first argues that the jury's verdict was against the overwhelming weight of the evidence. She contends the State failed to show a common design or understood purpose between the participants and that the State failed to prove her knowing participation in the conspiracy.

¶13. A challenge to the factual sufficiency of the evidence, i.e., that the jury's verdict is against the overwhelming weight of the evidence, must be brought to the attention of the trial court via a motion for new trial so that the trial judge may have an opportunity to pass upon "[the] validity [of the allegation] before this Court is called upon to review [the matter]." *Colson v. Sims*, 220 So. 2d 345, 346 n. 1 (Miss. 1969); *Gilmer v. Gunter*, 46 So. 2d 447, 448 (Miss. 1950); *Jackson v. State*, 423 So. 2d 129, 132 (Miss. 1982); *Ross v. State*, 603 So. 2d 857, 861 (Miss. 1992). Otherwise, the insufficiency claim is not properly preserved for appeal. *Medious v. State*, 375 So. 2d 405, 406 (Miss. 1979); *Maroone v. State*, 317 So. 2d 25, 27 (Miss. 1975). An exception to this rule is when the evidence wholly fails to sustain the charge in the indictment and the record contains no evidence which would support the conviction. *Medious*, 375 So. 2d at 406; *Dixon v. State*, 519 So. 2d 1226, 1228 (Miss. 1988).

¶14. Smith failed to file a motion for new trial. The record evidence sustains the charge in the indictment and presents ample evidence to support Smith's conspiracy conviction. Thus, the exception to the rule which allows a party to allege factual insufficiency for the first time on appeal is inapplicable. We, therefore, decline to discuss this assignment of error on its merit as it is not properly before this Court.

## III.

¶15. Smith next alleges the trial court erred in permitting the prosecutor to question co-conspirator Foster concerning Smith's assistance in transporting marijuana five times before the date of the instant

offense. Smith contends the testimony regarding previous drug deals was not admissible under Miss. R. Evid. 404(b) and that the testimony was prejudicial.

¶16. The State responds the previous drug deals were admissible to show scheme or plan for the delivery of marijuana to buyers and users in Jackson, Mississippi. The State further responds that Smith failed to lodge a timely objection to this testimony.

¶17. The pertinent part of Foster's direct examination follows:

Q: How long have you -- had you known Frelessies Smith?

A: Since July of '94.

Q: And under what circumstances was it that you came to know her?

A: Transporting marijuana

Q: Okay. And tell us your involvement in that matter.

A: I would come from Texas by plane, and she would be at the airport in Mississippi to pick me up.

Q: Okay. And when she would pick you up, what would then occur?

A: We would get in her car; and we would drive to the destination where the drugs were supposed to be given to the guy who needed them, the person who needed the marijuana.

Q: Okay. On how many occasions prior to September 7 of 1994 had this scheme worked for you and Frelessies Smith?

Defense counsel: Object to the relevance, Your Honor.

Court: I'll overrule the objection and give you a continuing objection to this line of questioning, Mr. Moore. And I'll allow you to make your record on the point later.

Defense counsel: Yes, sir. The one other grounds for the objection I'd like to make is the constitutional 404(b) --

Court: I understand . . . And so the objection will be overruled.

¶18. While Smith's objection under Miss. R. Evid. 404 was rather late, we are not prepared to apply a procedural bar in this instance because the exchange between Foster and the prosecution prior to the objection had not set out the chronology of events. In other words, we cannot agree with the State that upon reading the exchange before the objection that the jury knew Foster was referring to drug transactions prior to September 7, 1994. In fact, the conversation was general in nature and Foster could have been referring to the September 7 incident when she stated that she knew Smith from transporting marijuana. Thus, we deal with the merits of the instant assignment of error.

¶19. Miss. R. Evid. 404(b) cautions that evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person to show that he acted in conformity therewith. Such evidence may

be admissible for other purposes such as to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

¶20. A conspiracy exists where two or more persons agree to accomplish any unlawful purpose or to accomplish a lawful purpose by any unlawful means. Miss. Code Ann. § 97-1-1 (1994); *McCray v. State*, 486 So. 2d 1247, 1251 (Miss. 1986). In *Griffin v. State*, 480 So.2d 1124 (Miss.1985), this Court reiterated the well-established principle of conspiracy. There must be recognition by the conspirators that they are entering a common plan and that they knowingly intend to further its common purpose. *Id.* at 1126 (citing *McDonald v. State*, 454 So. 2d 488 (Miss. 1984)); *McCray*, 486 So. 2d at 1251. If there is an agreement to accomplish an unlawful purpose, then knowledge of that agreement necessarily follows. "The agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators." *Griffin*, 480 So. 2d at 1126.

¶21. We noted further in *Griffin* that admissible evidence in a conspiracy case covers a wide range, including the commission of an offense since what the defendant did in the past is evidence of what he intended to do. *Id.* (citing *King v. State*, 123 Miss. 532, 86 So. 339 (1920)).

¶22. Here, Foster's testimony regarding the prior drug transactions obviously was admissible to show that she and Smith had previously trafficked drugs and intended to do the same on the day of their arrests. Smith's argument to the contrary is wholly without merit and therefore fails.

## IV.

¶23. Smith's final assignment of error asserts that her criminal prosecution and conviction violated the Double Jeopardy Clauses of the Mississippi and United States Constitutions because her vehicle was forfeited to the State prior to her criminal trial. According to Smith, the forfeiture of her vehicle was punitive as it bore no correlation to any damages sustained by society. She relies primarily upon *United States v. Halper*, 490 U.S. 435 (1989).

¶24. The State responds that civil in rem forfeiture proceedings do not constitute punishment for double jeopardy purposes, emphasizing the recent decision of *United States v. Ursery*, 518 U.S. 267 (1996). The State's position is well taken.

¶25. In *Halper*, the United States Supreme Court found a civil sanction to be punishment as it served the goals of retribution and deterrence instead of nonpunitive governmental objectives. *Halper*, 490 U.S. at 448-49. Thus, the *Halper* Court announced the following rule for "the rare case . . . where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused":

> Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment.

*Id.* at 449-50.

¶26. Contrary to *Halper's* holding, however, the United States Supreme Court had long held the federal double jeopardy clause inapplicable to civil forfeitures because such proceedings do not impose punishment. *Various Items of Personal Property v. United States*, 282 U.S. 577 (1931); *One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232 (1972); *United States v. One Assortment of 89 Firearms*, 465 U.S. 354 (1984). In *United States v. Ursery*, 518 U.S. 267 (1996), the Supreme Court reiterated the position that a civil forfeiture is not equivalent to punishment for purposes of the Double Jeopardy Clause, rejecting the application of *Halper* to the facts of that case. More recently in *Hudson v. United States*, 118 S. Ct. 488 (1997), the Supreme Court put to rest any uncertainty regarding the application of *Halper* to civil in rem forfeiture proceedings for purposes of the Double Jeopardy Clause.

¶27. Recognizing the "wide variety of novel double jeopardy claims spawned in the wake of *Halper*," the *Hudson* Court noted that its analysis in *Halper* deviated from its traditional double jeopardy analysis and was "ill considered," noting that other constitutional provisions were more suited for protecting some of the ills at which *Halper* was directed, such as the Eighth Amendment's protection against excessive civil fines including forfeitures. *Id.* at 493-95. Thus if *Ursery* was less than clear on the matter, *Hudson* answers and rejects Smith's claim based upon *Halper* that she was placed in double jeopardy when she was prosecuted and convicted following the forfeiture of her automobile.

¶28. Turning to Smith's state double jeopardy claim, we likewise find no merit. First, she provides no authority or argument for the proposition that our state's Double Jeopardy Clause provides greater protection than its federal counterpart. This Court has never held such and we decline to do so now. Moreover, Smith's state claim fails under the reasoning of *Ursery* and *Hudson* and our decision in *State ex rel. Mississippi Bureau of Narcotics v. Lincoln County*, 605 So. 2d 802, 804 (Miss. 1992).

¶29. There, we held that the forfeitures in Miss. Code Ann. § 41-29-176 through 41-29-181 are civil in nature. *Id.* Section 41-29-176(1) (Supp. 1997) covers all property other than controlled substances that is forfeited under the Uniform Controlled Substances Law. Smith's Honda presumably was forfeited pursuant to a provision of the Uniform Controlled Substances Law.[1] We explained further in *Mississippi Bureau of Narcotics* the concept of guilty property -- that an in rem civil action proceeds against the property under the legal fiction that the property itself is guilty of the violation alleged in the statute. *Id.* The owner's presence is not even required at the forfeiture proceeding because it is the guilty property -- here a car -- against which the forfeiture is aimed. *Id.*

¶30. Section 41-29-153(4) (1993) allows for the forfeiture of all conveyances, including vehicles, "which are used, or *intended for use*, to transport, or in any manner to facilitate the transportation, sale, receipt, possession or concealment of [a controlled substance]." (emphasis added). Clearly, Smith's intended use of her car to transport Foster and the marijuana to the local buyer falls within the parameters of this section. The forfeiture in this instance was of the vehicle, was not criminal in nature, was not overly punitive and did not place Smith in jeopardy, thereby barring her subsequent prosecution and conviction under our state's Double Jeopardy Clause. Her state claim therefore necessarily fails.

## V.

¶31. Finding the evidence sufficient, no reversible error in allowing the co-conspirator to testify regarding prior drug transactions and no double jeopardy violations under the federal or state

constitutions, we uphold Smith's conviction.

¶32. **CONVICTION OF CONSPIRACY TO POSSESS MORE THAN ONE KILOGRAM OF MARIJUANA WITH INTENT TO DISTRIBUTE AND SENTENCE OF TEN (10) YEARS WITH CONDITIONS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**McRAE, JUSTICE, DISSENTING:**

¶33. I respectfully dissent. Any proceeding brought to deprive a person of property based on his commission of a crime puts that person in jeopardy for that crime. The two instances of jeopardy in this case were directed at the charge of conspiracy against Smith. Accordingly, the Double Jeopardy Clause precludes the forfeiture of Smith's property and Smith's subsequent conviction for conspiracy.

¶34. This Court must examine the actual character of the statute at issue. Just as civil sanctions which have retributive or deterrent consequences along with remedial functions should not necessarily mean that they are "punishment per se" for double jeopardy purposes, those same sanctions should not simply be deemed "not punishment." Rather than conclude that no civil forfeiture can be "punishment" or criminal in nature, this Court should apply a rebuttable presumption in civil forfeiture cases. We should presume that civil forfeitures have punitive character unless such forfeitures result only in the seizure of proceeds (direct or indirect) or contraband.

¶35. Under such a presumption, the State would be able to prove the remedial character of a statute, or it could prove that the remedial nature of the statute outweighs the punitive nature. Either way, the State would have the burden of proving the nature of the statute. This presumption would reduce the potential for governmental encroachment upon constitutional rights, while the State's ability to use civil forfeiture proceedings as a tool of law enforcement would be preserved and would be properly directed toward stripping drug dealers of ill-gotten gains. Further, it would not call for analysis of every statute being applied.

¶36. Achieving laudable results through the forfeiture statutes does not justify sacrificing the protections afforded to defendants by the Mississippi Constitution. If a statute is to serve anything other than a solely remedial purpose, constitutional protections must extend to the exercise of authority under that statute. In this case, the plain wording of Mississippi's Double Jeopardy Clause prohibits putting a person in jeopardy twice for the same offense. The forfeiture which the State effected put defendant Smith in jeopardy for an offense that was the same as that for which she was later prosecuted. The immediate sanction here was the confiscation of an automobile. Miss. Const. art. III, § 14 prevents undue deprivation of life, liberty and property. It follows that a proceeding brought to deprive a person of property based on his commission of a crime puts him in jeopardy for that crime just as surely as does a proceeding to deprive him of life or liberty. Similarly, it is clear that the two instances of jeopardy in this case were directed at the same offense.

¶37. That the Mississippi Legislature may have intended the forfeiture to be civil rather than criminal is not dispositive in and of itself; the mandate of the Double Jeopardy Clause still governs. If a governmental action violates a constitutional prohibition, no evidence of the Legislature's purportedly benign intent can make it constitutional. The nonpunitive goals of a civil in rem forfeiture should not immunize the forfeiture from constitutional challenge under double jeopardy principles. Certain punitive aspects of forfeiture, including the deterrent aim and its dependence on an underlying criminal violation, subject it to double jeopardy constraints.

¶38. Here, the defendant is being convicted twice--once in the proceeding to seize her property and once in the proceeding to charge her with a crime. Once the State seized Smith's property under the claim that it was used to facilitate a crime, double jeopardy applied. In effect, the State took property because it was used in a crime, necessarily concluding that the defendant was part of the crime and effectively convicting her of that crime. Subsequently, the State turned right around and found her guilty of the underlying crime. However, the State cannot have it both ways. To avoid the constraints of double jeopardy, the State should be required to seize property when a defendant is charged with a crime and to go forward with a combined forfeiture and criminal proceeding before a jury.

¶39. Striking the proper balance between law enforcement and individual liberty requires that this Court exercise its independent judgment in declaring unconstitutional forfeitures conducted in the manner shown in the case sub judice. Accordingly, I would find that the conviction of Frelessies Smith for conspiracy after the forfeiture of her vehicle which was allegedly involved in the conspiracy violated the Double Jeopardy Clause of the Mississippi Constitution.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. The record does not indicate which provision was used to forfeit Smith's vehicle.