IRVING, J., for the court.
¶ 1. A Clarke County jury, finding that Glenn Chapman maliciously prosecuted an aggravated assault charge against Trapp Williams, returned a $10,000 verdict against Chapman, and a judgment was entered accordingly. Before us is Chapman’s appeal which presents the following issues: (1) whether the verdict of the jury is contrary to the overwhelming weight of the evidence, (2) whether the court erred in admitting a videotape into evidence, and (3) whether the jury was properly instructed.
¶ 2. Discerning no error, we affirm.
FACTS
¶ 3. On October 18, 1999, between 6:15 and 6:30 p.m., Glenn Chapman was shot from behind while on his property in rural Clarke County. Chapman was shot while working on a fence line that ran north and south between his property and Trapp Williams’s property.
¶ 4. Chapman filed a civil complaint against Williams, alleging that Williams had shot him. Also, Chapman swore out a criminal affidavit against Williams, charging him with aggravated assault. The case was presented to a grand jury which declined to indict Williams.
*839 ¶ 5. Williams subsequently filed a counter-claim against Chapman for slander and malicious prosecution. The matter proceeded to trial, and, as previously mentioned, the jury returned a verdict for Williams on his counter-claim in the amount of $10,000.
ANALYSIS AND DISCUSSION OF THE ISSUES

1. The Weight of the Evidence

¶ 6. Chapman first argues that the verdict of the jury is contrary to the overwhelming weight of the evidence. He explains that “the jury ignored the evidence and the proof as well as the instructions of the court.” This argument implicates the discretion of a trial judge in denying an appellant’s motion for a new trial. However, Chapman failed to offer a motion for a new trial after the rendering of the judgment and thus is prevented from challenging on appeal the weight of the evidence. Smith v. State, 716 So.2d 1076, 1078(¶ 13) (Miss.1998). Whether the verdict is against the overwhelming weight of the evidence is a matter which the trial judge must decide first, before any appeal is taken, so that the trial judge may have an opportunity to pass upon the validity of the allegation before an appellate court is called upon to review the matter. Id. Since Chapman failed to move for a new trial, he is barred from raising this issue here. Id.
2. Admission of the Videotape
¶ 7. During the cross-examination of Printiss McCarra, one of Chapman’s witnesses, Williams’s counsel sought to introduce into evidence a copy of a videotape made by McCarra on October 18, 2001, two years after the shooting. Chapman immediately objected on the basis that the videotape was not listed on the pretrial order as a defense exhibit. The court ruled that the videotape would be admitted and shown to the jury. Chapman then objected again and requested that the court view the videotape and allow him to be .heard before it was shown to the jury. The court granted the request, dismissed the jury for the day and ordered that the videotape be played in the presence of the court and counsel. Shortly after the videotape began playing, the court ordered the playing stopped and stated that it was reversing its previous ruling allowing the videotape into evidence.
¶ 8. The court acknowledged that there was no way to determine whether the October 18, 2001 videotape reasonably depicted the scene on October 18, 1999, the evening of the shooting. The judge, however, allowed Williams to have the tape marked for identification. The judge further explained that, to the extent that the videotape possessed any impeachment value, the" same could be accomplished through cross-examining McCarra and eliciting testimony from another witness, J.G. Kufel, to refute McCarra’s assertions as to what could be seen.
¶ 9. On the following morning, Williams reasserted to the judge that he wanted to introduce the videotape. Williams explained that he was not offering the videotape to depict the conditions that existed on October 18,' 1999, but sought to attack McCarra’s credibility. According to Williams, the videotape demonstrated that McCarra was mistaken as to the time he allegedly saw J.G. Kufel and another witness, Buddy Williams, approach the area where he was filming. Moreover, Williams explained that McCarra was inaccurate in his testimony concerning the degree of visibility at the scene that particular evening. To rebut Williams’s arguments, Chapman questioned the accuracy of both the videotape’s recording of the scene and the time displayed on the videotape. After *840 listening to both sides, the trial judge responded:
BY THE COURT: All right. Well, I am going to have the video admitted into evidence as Exhibit 9. This video was made two years after this occurrence occurred. The reason I am allowing it into evidence is not to depict the conditions of the scene as they existed on October 18, 1999, but Mr. McCarra has testified to certain things that he could see. I feel like counsel should have the opportunity to use this video that this witness made to attempt to impeach him. As to whether the accuracy or— not the accuracy, but how good the video or camera was, that is — I am going to let you — you can argue that. But the jury can look at the video and make its own determination. So I will have it marked as Exhibit 9. I don’t think that the — I am allowing the video to be used for cross-examination or impeachment purposes, and like I said, not to show the conditions. So I don’t think the whole video should be just sat down and played for the jury. If you — so that will be my ruling. Okay. So have it marked....
¶ 10. Chapman argues that no foundation was laid for admission of the entire videotape, that the court failed to make a Rule 403 balancing analysis and that, although the videotape was admitted for impeachment purposes only, no such impeachment occurred. Williams counters that the videotape was not intended to depict the scene as it existed on October 15, 1999[1]. He explains that Chapman put McCarra on the stand to testify to the conditions on October 18, 2001, two years after the alleged shooting. According to Williams, Chapman opened the door for introduction of any evidence that would test McCarra’s credibility.
¶ 11. “Under this Court’s standard of review, the admissibility of evidence rests within the discretion of the trial judge. Unless his judicial discretion is abused, this Court will not reverse his ruling. The same standards used in determining the admissibility of photographs are applicable to the admission of videotapes.” Davis v. State, 767 So.2d 986, 996(¶(24) (Miss.2000). Our supreme court, in Jesco, Inc. v. Shannon, 451 So.2d 694, 702 (Miss.1984), cautioned trial judges to “preview such evidence to determine its probative value as against its prejudicial effects upon a jury.” Relevant evidence “may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” M.R.E 403.
¶ 12. Rule 901(b)(1) of the Mississippi Rules of Evidence provides that authentication can be accomplished by testimony from someone familiar with and possessing knowledge of the contents of the document or recording. McCarra testified that he set up the video equipment, was present when the events on the videotape transpired, and could identify the videotape through his observation of it. Also, McCarra viewed the copy of the videotape and verified that the videotape was an accurate copy of the one which he made on October 18, 2001. Since McCarra was familiar with the scene and testified sufficiently to the accuracy of the recording, the authenticity of the videotape was prov *841 en. See Wells v. State, 604 So.2d 271, 277 (Miss.1992).
¶ 13. Once the authenticity of the videotape was established, the only remaining question was the relevance of it to the matter being tried. We have already noted that the trial judge admitted the videotape for impeachment purposes only. Our review of the record reveals that Chapman is correct in asserting Williams’s counsel, during his cross-examination of McCarra, did not direct McCarra to any specific thing on the videotape which contradicted McCarra’s direct examination testimony. However, the jury heard McCarra’s direct examination testimony and could decide for itself whether the videotape supported or contradicted McCarra’s testimony. While directing McCarra to the specific portion of the videotape that contradicted his direct examination testimony would have been the proper way to use the videotape to impeach him, we cannot say that the trial court abused its discretion by admitting the videotape into evidence. Therefore, we find no merit in Chapman’s contention on this issue.
3. Jury Instruction
¶ 14. Chapman argues that the trial court erred when it gave an instruction to the jury that it should award money damages to the prevailing party. He explains that this jury instruction is in direct conflict with the proper instruction and that it was possible for the jury to find that neither party had proven damages. Therefore, he asserts that the instruction was erroneous and prejudicial. Williams, on the other hand, argues that Chapman did not object to the instruction when it was given because, at the time, Chapman believed that the instruction would be in his favor.
¶ 15. “When determining whether reversible error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole to determine whether a jury has been incorrectly instructed.” Haggerty v. Foster, 838 So.2d 948, 953(¶4) (Miss.2002). “When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Id.
¶ 16. In the ease sub judice, the following exchange occurred concerning the contested jury instruction:
BY THE COURT: Let the record reflect that the jury has sent a note to the Court in writing. And the note is, “Do we have to award a dollar amount?” My answer to that will just be simply “yes.” If they find in favor of a party, then they are entitled to be compensated pursuant to the instructions. There is no minimum or maximum. So my recommended response would just be “yes.” Does the plaintiff have any objection to that?
BY MR. HOWELL: None.
BY THE COURT: Mr. Williams?
By MR. WILLIAMS: No, Sir.
¶ 17. After both parties’ approval of the instruction, it was submitted to the jury which subsequently found for Williams in the amount of $10,000. “Failure to make a contemporaneous objection and allow the trial court opportunity to cure the defect is a procedural bar and constitutes a waiver of the argument on appeal.” Haggerty, 838 So.2d at 954(¶ 8). Here, Chapman’s attorney not only failed to object to the language of the instruction at trial, he affirmed that he had no objection to the instruction. We therefore find that Chapman’s objection to the language of the instruction was not properly preserved, and his argument on appeal is not properly before this Court.
*842 ¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF CLARKE COUNTY IS AFFIRMED. STATUTORY DAMAGES AND INTEREST ARE AWARDED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, LEE, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.

. Upon consideration of the record and arguments made by Williams in his brief, it is apparent that this date listed in his argument was a typo and should read October 18, 1999, instead of October 15, 1999.