72 So.3d 1090 (2010)
Justin David SHAFFER a/k/a Justin David Schaffer, Appellant
v.
STATE of Mississippi, Appellee.
No. 2009-KA-00151-COA.
Court of Appeals of Mississippi.
September 14, 2010.
Rehearing Denied March 1, 2011.
*1093 Eleanor Johnson Peterson, attorney for appellant.
Office of the Attorney General by John R. Henry Jr., attorney for appellee.
EN BANC.
CARLTON, J., for the court:
¶ 1. A jury convicted Justin David Shaffer of the exploitation of a child by solicitation for the purpose of engaging in sexually explicit conduct under Mississippi Code Annotated section 97-5-33(6) (Rev.2006). The circuit court judge then sentenced Shaffer to serve twenty-five years in the custody of the Mississippi Department of Corrections (MDOC) without the possibility of parole, and he was ordered to pay a $50,000 fine. On appeal, Shaffer argues that: (1) there was insufficient evidence to convict him of the crime charged because there was no actual minor child involved in Shaffer's conduct; (2) certain Internet chat logs were improperly admitted into evidence at trial because the logs were not properly authenticated; (3) his right to confront witnesses against him was violated because the chat logs were admitted without calling as a witness the person responsible for maintaining the proxy server; (4) the circuit court judge failed to recuse herself despite her bias against Shaffer; and (5) his conduct violates two criminal statutes; thus, he should have been sentenced under the statute providing the lesser punishment.
¶ 2. Upon review, we reverse the conviction for the indicted offense of child exploitation and render a finding of guilt for the offense of attempted child exploitation. See Miss.Code Ann. § 99-19-5 (Rev.2007). While we recognize that the offense of child exploitation and attempted child exploitation carry the same statutory penalties, we remand this case to the sentencing authority, the circuit court, to determine if any reassessment of the sentence is appropriate.

FACTS
¶ 3. On June 29, 2006, Shaffer, a resident of Greene County, Mississippi, entered into an Internet chat room operated by *1094 Yahoo! under the username "cowboy39461." Deanna Doolittle, a twenty-nine-year-old woman living in Grand Junction, Colorado, also entered into the chat room. Doolittle served as a volunteer for the organization Perverted Justice, which seeks to find Internet predators who are looking for minors with whom to have sex. She posed as a thirteen-year-old girl named Chloe living in Byram, Mississippi, and entered the chat room under the username "orlandoluvsme2."
¶ 4. Shaffer and "Chloe" participated in several Internet chats, several of which contained sexually explicit conversation. They also held a series of phone calls in which other Perverted Justice volunteers posed as "Chloe."[1] The two arranged to meet, and "Chloe" gave Shaffer the address of a house in Byram that the Hinds County Sheriff's Department used as a sting house. Shaffer refused to go to the house; instead, he agreed to meet "Chloe" at a nearby church. On July 8, 2006, Shaffer arrived at the church, and officers from the sheriff's department then arrested him. When officers searched Shaffer's vehicle upon his arrest, they found a black bag containing several condoms and a bottle of KY massage oil.
¶ 5. The State charged Shaffer with the exploitation of a child by solicitation for the purposes of sexually explicit conduct, and a jury found Shaffer guilty as charged. The circuit court sentenced him to twenty-five years in the custody of the MDOC without the possibility of parole, and the court ordered him to pay a $50,000 fine. The circuit court then denied Shaffer's post-trial motion for a judgment notwithstanding the verdict or, alternatively, a new trial.

DISCUSSION

I. Whether there was insufficient evidence to convict Shaffer of the exploitation of a child under Mississippi Code Annotated section 97-5-33(6) (Rev.2006) because there was no actual child involved in Shaffer's conduct.
¶ 6. A jury convicted Shaffer of the exploitation of a child under Mississippi Code Annotated section 97-5-33(6), which states:
No person shall, by any means including computer, knowingly entice, induce, persuade, seduce, solicit, advise, coerce, or order a child to meet with the defendant or any other person for purpose of engaging in sexually explicit conduct.
"Child" is defined as "any individual who has not attained the age of eighteen (18) years." Miss.Code Ann. § 97-5-31(a) (Rev.2006). Shaffer submits that the circuit court erred in failing to grant his motion for a directed verdict because the State failed to prove that a child was involved in the solicitation, an essential element of the indicted crime. Shaffer asserts that even though he thought he had communicated with "Chloe," a thirteen-year-old girl, he had actually communicated with Doolittle, a twenty-nine-year-old woman posing as "Chloe."
¶ 7. The Mississippi Supreme Court has established the standard for reviewing challenges to convictions based on sufficiency of the evidence, stating that:
The sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence consistent with the defendant's guilt must be accepted as true. *1095 The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury.
Muscolino v. State, 803 So.2d 1240, 1242-43 (¶ 10) (Miss.Ct.App.2002) (citation omitted). Similarly, when reviewing the denial of a motion for a directed verdict on an objection to the legal sufficiency of the evidence, we examine the evidence in a light most favorable to the State to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (citation omitted). In our examination of the evidence in this case, we found no evidence of a "child" in the solicitation, which is required to prove the indicted offense.[2] We will now turn to the statutory requirements as applied to the facts of this case.
¶ 8. The State indicted Shaffer in violation of section 97-5-33(6) for the exploitation of a child for purposes of sexually explicit conduct. As stated, the statutory language at the time of Shaffer's 2006 indictment required proof that a child was involved in the solicitation to constitute child exploitation in violation of the indicted statute.[3]
¶ 9. The statutory elements of the indicted offense are: "No person shall, by any means including computer, knowingly entice, induce, persuade, seduce, solicit, advise, coerce, or order a child to meet with the defendant or any other person for the purpose of engaging in sexually explicit conduct." See Miss.Code Ann. § 97-5-33(6). In applying these statutory elements to the indictment in this case, the State bore the burden of proof to show (1) on or between June 29, 2006, through July 9, 2006, Shaffer, willfully and unlawfully, knowingly enticed, induced, persuaded, seduced, solicited, advised, coerced, or ordered a child (2) to meet with him to engage in sexually explicit conduct. The evidence in the record shows Shaffer actually solicited an adult, Doolittle, posing as a thirteen-year-old child.
*1096 ¶ 10. At the time the State indicted Shaffer in 2006, subsection eight of section 97-5-33 stated: "The fact that an undercover operative or law enforcement officer was involved in the detection and investigation of an offense under this section shall not constitute a defense to a prosecution under this section." Miss.Code Ann. § 97-5-33(8) (Rev.2006). Shaffer acknowledges that this language of subsection eight of section 97-5-33 allows that an undercover operative or law enforcement officer may be involved in the investigation. Shaffer contends, however, that this language fails to relieve the State's burden of proof under subsection six to show a child's involvement in the offense, even though law enforcement may pose as a child or be otherwise involved in the investigation.
¶ 11. We acknowledge that a 2007 amendment indeed later authorized the involvement of law enforcement in investigations and specified that such authorized involvement included posing as a child.[4] Nonetheless, the State indicted Shaffer prior to the 2007 amendment, and we refrain from retroactively applying any interpretation of the later-amended statute to Shaffer's case. See United States v. Brown, 333 U.S. 18, 25, 68 S.Ct. 376, 92 L.Ed. 442 (1948) (A statute imposing criminal penalties must be "strictly construed" in favor of the accused.); Boatner v. State, 754 So.2d 1184, 1189 (¶ 14) (Miss.2000); see also Commonwealth v. Cauto, 369 Pa.Super. 381, 535 A.2d 602, 606-07 (1987) (Solicitation of sexual abuse does not require criminal behavior by the person being solicited but merely complicity or participation in the commission of a crime.). Thus, in applying section 97-5-33 as codified in 2006 to this case, as to the sufficiency of the evidence to prove the indicted offense of child exploitation, we fail to find any relief for the State's burden to prove evidence of some involvement by a child. However, the record contains more than sufficient evidence proving Shaffer guilty of attempted child exploitation. See United States v. Meek, 366 F.3d 705, 717-20 (9th Cir.2004).[5]
¶ 12. In looking to this state's jurisprudence, this Court has held that "an appellate court may remand a case to the trial court for sentencing on a lesser-included offense where the greater offense was not proved, but the elements of the lesser-included offense were sufficiently met." Johnson v. State, 52 So.3d 384, 396 (¶ 36) (Miss.Ct.App.2009) (citing Shields v. State, 722 So.2d 584, 585 (¶ 7) (Miss.1998)). Shields further clarifies that this direct-remand rule applies even when the jury received no lesser-included offense instruction by the trial court. Shields, 722 So.2d *1097 at 587 (¶ 17). Additionally, section 99-19-5(1) allows a defendant charged with a greater offense to be found guilty of an attempt to commit the charged offense without the necessity of a separate indictment. Section 99-19-5(1) states as follows:
On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense, or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment, whether the same be a felony or misdemeanor, without any additional count in the indictment for that purpose.
(Emphasis added). We find that Count I of the indictment before us sufficiently charged Shaffer with the crime of exploitation of a child; therefore, we find Shaffer guilty of attempted exploitation. We note that: "The purpose of an indictment is to put the defendant on notice of the nature and cause of the charges against him." Fulcher v. State, 805 So.2d 556, 560 (¶ 11) (Miss.Ct.App.2001) (citing Richardson v. State, 769 So.2d 230, 233 (¶ 4) (Miss.Ct. App.2000)). Because the indictment sufficiently charged Shaffer with the crime of exploitation of a child, then pursuant to section 99-19-5 he can, therefore, be found guilty of attempted exploitation, where the elements have been sufficiently met.[6]
¶ 13. Upon our review of the record herein, we found ample evidence supporting a finding of guilt for attempted child exploitation. To constitute the crime of attempt, Mississippi Code Annotated section 97-1-7 (Rev.2006) requires "any overt act toward the commission" of an offense. In Hughes v. State, 983 So.2d 270, 278 (¶ 28) (Miss.2008) (citations omitted), the Mississippi Supreme Court stated that: "An attempt to commit a crime consists of three elements: `(1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission.'" The Court also held that: "An overt act is one that `will apparently result, in the usual and natural course of events if not hindered by extraneous causes, in the commission of the crime itself, and an act apparently adapted to produce the intended result is sufficient to constitute the overt act essential to an attempt.'" Id. at 279 (¶ 32); see also Duke v. State, 340 So.2d 727, 729-30 (Miss. 1976) (The supreme court held that the crime of attempt requires an act toward its consummation; "[s]o long as an act rests in bare intention, it is not punishable; but, immediately when an act is done, the law judges not only of the act done, but of the intent with which it was done[.]").
¶ 14. Count I of Shaffer's indictment charged the following:
on or between June 29, 2006[,] through July 9, 2006, [Shaffer] did unlawfully, willfully, and feloniously through the use of messaging sent via a computer and cellular telephone knowingly entice, induce, *1098 persuade, seduce, solicit, advise, coerce, or order a child under the age of 18 years, to meet with him for the purpose of engaging in sexually explicit conduct, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.
After reviewing the sufficiency of the record, we find that although the State failed to prove the charged offense, the record contains evidence showing that Shaffer's actions are more than sufficient to meet the statutory requirements necessary for a conviction of attempt to commit the charged offense. See Miss.Code Ann. § 99-19-5. The record reflects that Shaffer solicited "Chloe," a purported thirteen-year-old child, by actively logging into a chat room and communicating with her.
¶ 15. The evidence also showed that Shaffer used sexually salacious language in chat-room communications. Shaffer further engaged in attempting to solicit a child for sexually explicit conduct by agreeing to meet "Chloe" at a nearby church. Although the State presented no evidence that the offense involved an actual child, as required to prove the charged offense, we find that the State met the burden of proving Shaffer's intent and his attempted efforts to solicit a child for sexually explicit conduct. In Duke, 340 So.2d at 730, the Mississippi Supreme Court held that impossibility is not a defense for attempt "when the impossibility grows out of extraneous facts not within control of the party." See also Stokes v. State, 92 Miss. 415, 46 So. 627, 629 (1908).[7]
¶ 16. Therefore, based upon the foregoing, we reverse Shaffer's conviction as to the greater offense of exploitation of a child under section 97-5-33(6), and we render a finding of guilt for the offense of attempted exploitation of a child. See Miss.Code Ann. § 99-19-5. Consequentially, we remand this case to the circuit court to determine if any reassessment of the sentence is appropriate.[8]

II. Whether the chat logs of the chats between Shaffer and "Chloe" were properly authenticated.
¶ 17. Shaffer claims that the circuit court improperly allowed the State to enter the chat logs containing the chats between Shaffer and "Chloe" into evidence without proper authentication. Specifically, he argues that the State presented no proof of who had created the print out of the chat logs, because Doolittle herself did not actually print the logs. The State responds that Doolittle's testimony explaining that the logs constituted an accurate reflection of the contents of her own chats with Shaffer provided sufficient authentication.
¶ 18. Mississippi Rule of Evidence 901(a) governs authentication of evidence, and states that: "The requirement of authentication *1099 or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." We review a circuit court's decision to admit or exclude evidence under an abuse-of-discretion standard. Graves v. State, 492 So.2d 562, 565 (Miss.1986). "Unless the judge abuses this discretion so as to be prejudicial to the accused, [this Court] will not reverse" the circuit court's ruling. Jefferson v. State, 818 So.2d 1099, 1104 (¶ 6) (Miss.2002) (citing Hughes v. State, 735 So.2d 238, 270 (¶ 134) (Miss.1999)).
¶ 19. During her testimony, Doolittle provided extensive information of her first-hand knowledge about the operations of Perverted Justice. She explained that Perverted Justice used three possible methods to store a record of the chats involving Perverted Justice volunteers. The chats could be archived by the host, Yahoo!, and then saved on either the hard drive of her computer, or it could be saved on a proxy. She testified that the chats she personally conducted with Shaffer were saved on a proxy located at the sting house in Byram. The proxy method constituted the preferred method of storage because the chats stored on the proxy contained time and date information that could not be altered.
¶ 20. Shaffer claims that the State should have offered an expert to explain the various methods of saving the chat logs. He contends that the person responsible for creating the print out introduced into evidence was required to testify in order to have a proper authentication of the document. However, Doolittle testified as an authenticating witness utilizing her own first-hand knowledge of her chats with Shaffer. See Boatner, 754 So.2d at 1190-91 (¶¶ 18-21).
¶ 21. Mississippi Rule of Evidence 901(b)(1) allows authentication through testimony of a witness with knowledge "that a matter is what it is claimed to be." In Chapman v. Williams, 860 So.2d 837, 840 (¶ 12) (Miss.Ct.App.2003), this Court held that a witness who was familiar with a scene shown on a videotape and who also had testified sufficiently as to the accuracy of the recording properly authenticated the videotape. In Thames v. State, 5 So.3d 1178, 1187-88 (¶ 29) (Miss.Ct.App. 2009), we also held that testimony from a witness properly authenticated a videotape even though that witness did not actually record the videotape. The Court noted that the witness had the opportunity to review the video recording being admitted into evidence and also had personal knowledge to verify that it was a true and accurate depiction of what had occurred, thereby providing proper authentication of the videotape. Id.
¶ 22. Accordingly, we find that Doolittle was a proper witness to present testimony to verify the chats between Shaffer and "Chloe." Doolittle testified that she had an opportunity to read and "peruse" the copy of the chat logs introduced by the State. When asked if the chat logs constituted a true and accurate copy of the chats that she had engaged in with Shaffer, she responded, "absolutely." Additional evidence, including transcripts from the phone conversation between Shaffer and "Chloe," verified that Shaffer communicated with "Chloe" under the user name "cowboy39461."[9] In summary, Doolittle *1100 was the only witness who could have testified as to the accurateness of the content of the chat logs because she is the one who conducted the online chats with Shaffer. Thus, she possessed first-hand, personal knowledge of the accuracy of the chat logs. We, therefore, find that her testimony as a witness with personal knowledge satisfied the requirements of Rule 901(b)(1) to authenticate the chat logs. As a result, we find that the circuit court's decision to allow the admission of the chat logs into evidence was not an abuse of discretion.

III. Whether Shaffer's right to confront witnesses against him was violated because the chat logs were admitted without calling as a witness the person responsible for maintaining the proxy server.
¶ 23. Shaffer next argues that the failure to properly authenticate the chat logs resulted in a violation of his right to confront witnesses against him. He claims that the chat logs constituted testimonial evidence. He, therefore, claims that the person responsible for maintaining the proxy server should have testified and been available for cross-examination.
¶ 24. As the State responds, an assignment of error based on a violation of the confrontation clause must be asserted at the trial level. Mingo v. State, 944 So.2d 18, 28 (¶ 23) (Miss.2006). Shaffer failed to object to the chat logs on this basis; therefore, this issue is procedurally barred. Even so, Shaffer was afforded the right to fully cross-examine Doolittle. As we held above, Doolittle's testimony based on her first-hand, personal knowledge of the chats properly authenticated the chat logs. Therefore, she was the proper witness for Shaffer to confront as to the accuracy of the chat logs of their conversations because she conducted the chats at issue. See Boatner, 754 So.2d at 1190-91 (¶¶ 18-21).
¶ 25. Within this argument, Shaffer notes that there was testimony that he contacted "Chloe" under a second username, "Girth_i," and he complains that those chat logs were not introduced by the State. Therefore, he claims that the record of his chats is incomplete, and he should have been able to ask the operator of the proxy server about the missing chat logs. Shaffer fails to inform this Court of the relevance of the additional chats, and he asserted no request to the circuit court to require the State to introduce more chat logs. The record reflects that Shaffer raised no objections at trial as to any lack of completeness. See M.R.E. 401 (Defining relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."). Further, Shaffer failed to cross-examine Doolittle at trial about the missing chats and failed to attempt to offer them into evidence himself.[10]See M.R.E. 106 ("When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement *1101 which ought in fairness to be considered contemporaneously with it."). See also Sanders v. State, 237 Miss. 772, 776-77, 115 So.2d 145, 146-47 (1959). This issue is procedurally barred and without merit.

IV. Whether the circuit court judge erred in failing to recuse herself from this case.
¶ 26. Shaffer contends that the circuit court judge was biased against him and should have recused herself from this case. The supreme court set forth the standard for review for issues of recusal in Tubwell v. Grant, 760 So.2d 687, 689 (¶ 7) (Miss.2000), which provides:
Under Canon 3 of the Code of Judicial Conduct, an appellate court, in deciding whether a judge should have disqualified himself from hearing a case uses an objective standard. "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." Jenkins v. Forrest County Gen. Hosp., 542 So.2d 1180, 1181 (Miss. 1988). "The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application." Collins v. Joshi, 611 So.2d 898, 902 (Miss.1992). This Court presumes that a trial judge is qualified and unbiased, and this presumption may only be overcome by evidence which produces a reasonable doubt about the validity of the presumption. Bredemeier v. Jackson, 689 So.2d 770, 774 (Miss.1997). When a judge is not disqualified under the constitutional or statutory provisions the decision is left up to each individual judge and is subject to review only in a case of manifest abuse of discretion. Buchanan v. Buchanan, 587 So.2d 892, 895 (Miss.1991).
See also Gray v. State, 37 So.3d 104, 105-06 (¶ 5) (Miss.Ct.App.2010).
¶ 27. Shaffer appeared before the circuit court judge in this case in a prior criminal trial in wherein the State prosecuted Shaffer for capital murder. In that case, the jury found Shaffer guilty of simple murder and sexual battery, and he then appealed. The supreme court reversed his conviction and remanded the case for a new trial in the circuit court. See Shaffer v. State, 740 So.2d 273 (Miss. 1998). On remand, the district attorney appeared before the circuit court judge and announced that the State wished to dismiss the indictment because insufficient evidence existed to proceed with a new trial.
¶ 28. Upon that backdrop, prior to trial in this case, Shaffer filed a motion to have the circuit court judge recuse herself on the ground that she uttered prejudicial comments about him after the reversal of his conviction for murder and sexual battery. Shaffer alleged that the circuit court judge voiced her disagreement with the district attorney's decision by stating that sufficient evidence existed to try Shaffer again. The prosecution disputed Shaffer's allegation, and in response, the prosecutor asserted that the circuit court judge expressed concern about the effect of the dismissal of the charges upon the victim's family and law enforcement involved in the murder case. The prosecutor argued that the circuit court judge provided no statements about Shaffer's guilt.[11]
¶ 29. The circuit court judge denied the motion for recusal, and Shaffer appealed the denial to the supreme court pursuant to Mississippi Rule of Appellate Procedure *1102 48B. On October 4, 2007, the supreme court denied Shaffer's request for recusal of the circuit judge. The case then proceeded to trial.
¶ 30. The record reflects that Shaffer never renewed the issue of recusal during the proceedings in the circuit court. As we held in King v. State, 897 So.2d 981, 988 (¶ 13) (Miss.Ct.App.2004), "impartiality is not apparent simply because a trial judge has presided over a previous criminal proceeding against the defendant." Shaffer fails to show this Court any new evidence of bias that was not previously considered by the supreme court. He claims that the circuit court judge's decision to allow the State to enter chat logs into evidence shows her bias against him. However, as discussed above, we find no abuse of discretion in that evidentiary ruling, nor do we find any evidence of prejudice emanating from that decision to be gleaned from the face of the record.
¶ 31. Shaffer further asserts that the circuit court judge evidenced bias against him in her remarks during his sentencing hearing. The circuit court judge stated: "Mr. Shaffer, I hate to say this but you and I go back many years ... in my position on the bench. I've seen your family in the courtroom before. I feel for them. I know they have been through hell and back ... with you." This statement shows no bias on the part of the circuit court judge, and this statement provides no proof that Shaffer's sentence was based on or resulted from any influence of bias.
¶ 32. We find that Shaffer failed to provide sufficient evidence to rebut the presumption that the circuit court judge was qualified and unbiased. Tubwell, 760 So.2d at 689 (¶ 7). Thus, we find no abuse of discretion by the circuit court judge in denying Shaffer's motion to recuse. This issue is without merit.

V. Whether Shaffer's conduct violated two criminal statutes such that he should have been sentenced under the statute providing the lesser punishment.
¶ 33. Finally, Shaffer maintains that his case should be remanded for resentencing. He asserts that his conduct violated two criminal statutes, Mississippi Code Annotated section 97-5-33 as well as section 97-5-27(3)(a) (Rev.2006). Shaffer claims that he should have been sentenced to the lesser punishment applicable to the offenses codified in section 97-5-27(3)(a).
¶ 34. With respect to his conviction for child exploitation on appeal, the record reflects that Shaffer failed to request any jury instruction regarding any lesser-related offense. Furthermore, Shaffer failed to raise this issue before the circuit court; thus, he cannot raise such issue for the first time on appeal.[12] The *1103 supreme court has held "that the defendant may request an instruction regarding any offense carrying a lesser punishment if the lesser offense arises out of a nucleus of operative fact common with the factual scenario giving rise to the charge laid in the indictment." Gangl v. State, 539 So.2d 132, 136 (Miss.1989). We recognize that the evidentiary standards for granting a lesser-offense instruction and a lesser-included offense instruction are the same. Id.; see also Harper v. State, 478 So.2d 1017, 1021 (Miss.1985). In addition, we have further clarified that "this standard is meant to apply only where the lesser-included offense instruction was requested." Trigg v. State, 759 So.2d 448, 452 (¶ 11) (Miss.Ct.App.2000) (circuit court did not allow lesser-included offense jury instruction for simple assault where attorney for defendant failed to request the instruction).
¶ 35. The supreme court has mandated that "case law does not impose upon a trial court a duty to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender." Giles v. State, 650 So.2d 846, 854 (Miss.1995) (citation omitted). The supreme court further stated that:
Even where there are two statutes covering the same crime, and there is a difference in the penalty between the two statutes, the [S]tate is under no obligation to prosecute under the statute with the lesser penalty. It may choose to prosecute under either, and so long as the choice is clear and unequivocal, the defendant has no right to complain.
Cumbest v. State, 456 So.2d 209, 222 (Miss. 1984). Therefore, the responsibility of requesting a lesser-included offense or lesser-related offense instruction rests solely upon the shoulders of the defendant. Id. Here, as previously stated, the record shows that Shaffer failed to request a jury instruction on this lesser-related offense under section 97-5-27(3)(a).
¶ 36. With respect to sentencing by the circuit court for a lesser-related offense, Shaffer cites Grillis v. State, 196 Miss. 576, 17 So.2d 525, 527 (1944), for the proposition that "when the facts which constitute a criminal offense may fall under either of two statutes, or when there is substantial doubt as to which of the two is to be applied, the case will be referred to the statute which imposes the lesser punishment." However, the facts in Grillis differ from the case before us, and the holding is inapplicable to the facts presented here.
¶ 37. In Grillis, the indictment used purposeful wording so that the alleged conduct could fall under either of the two different statutes applicable. Id. The indictment failed to specifically refer to either statute. Id. Because the indictment was unclear and failed to identify the applicable statute the defendant had allegedly violated in Grillis, the case was remanded for sentencing under the statute with the lesser punishment. Id.
¶ 38. The rule established in Grillis has been applied to ambiguous indictments *1104 failing to charge a defendant under a specific statute. See, e.g., Broadus v. State, 392 So.2d 203, 205 (Miss.1980) ("The indictment did not specify the amount of marihuana that defendant was charged with selling, so the trial court properly held that if defendant was convicted he would be sentenced under the statute which imposed the lesser punishment."); White v. State, 374 So.2d 225, 227 (Miss. 1979) ("We are unable to ascertain from the indictment which one of the two sections the defendant was indicted under.... If the [s]tate desires to seek the greater punishment provided by section 97-3-53, the indictment should have specifically referred to that section of the code.").
¶ 39. In contrast, Shaffer's indictment clearly provided that the State charged Shaffer with the exploitation of a child under section 97-5-33. We find that the indictment provided Shaffer with clear notice of which statute he was indicted under, and it specified his unlawful conduct that violated the statute, thereby tracking the statutory language. See Holifield v. State, 852 So.2d 653, 657 (¶ 9) (Miss.Ct. App.2003) ("[W]here an indictment tracks the language of a criminal statute it is sufficient to inform the accused of the charge against him."). Therefore, no ambiguity existed as to whether he was charged with exploitation of a child under section 97-5-33 or computer luring under section 97-5-27(3)(a). Moreover, Shaffer failed to request a jury instruction on the lesser-related offense and also failed to assert any request to the circuit court judge to be sentenced under the lesser-related statute. Accordingly, this issue is procedurally barred. Patterson v. State, 594 So.2d 606, 609 (Miss.1992). Notwithstanding the bar, we find this assignment of error possesses no merit.
¶ 40. THE JUDGMENT OF THE CIRCUIT COURT OF GREENE COUNTY OF CONVICTION OF EXPLOITATION OF A CHILD AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE AND TO PAY A $50,000 FINE IS REVERSED, AND A JUDGMENT OF CONVICTION OF ATTEMPTED EXPLOITATION OF A CHILD IS RENDERED. THIS CASE IS REMANDED FOR RESENTENCING. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GREENE COUNTY.
KING, C.J., AND ISHEE, J., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. MAXWELL, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY BARNES, J. GRIFFIS, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND MYERS, P.JJ., AND JOINED IN PART BY IRVING, J. ROBERTS, J., DISSENTS WITH SEPARATE WRITTEN OPINION.
MAXWELL, J., Specially Concurring:
¶ 41. I concur with the majority's finding that factual impossibility does not preclude attempted enticement-based convictions when unbeknownst to the defendant the purported child is actually a law-enforcement officer.[13] I also agree that an *1105 attempted exploitation conviction under Section 97-5-33(6) may be sustained on the charge of the completed crime. While at first blush this seems at odds with traditional notice requirements, a review of Mississippi statutory law makes clear:
On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense, or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment, whether the same be a felony or misdemeanor, without any additional count in the indictment for that purpose.
Miss.Code Ann. § 99-19-5(1) (Rev.2007) (emphasis added).

A. Statutory Law
¶ 42. This law as it applies specifically to attempts was first codified in 1848. See Hutchinson's 1848, ch. 64, art. 12, title 8, § 22 (The jury may find accused guilty "upon an indictment for any offense ... or of an attempt to commit such offense.") (emphasis added); see also Miss.Code of 1892, § 1426 ("On an indictment for any offense the jury may find the defendant guilty as to the offense charged, or of any attempt to commit the same offense ....") (emphasis added). In 1904, the Mississippi Supreme Court applied section 1426, the unchanged predecessor to section 99-19-5(1), and held the circuit court properly refused to instruct the jury that a defendant, on trial for rape, could not be convicted of an attempt to rape. Horton v. State, 84 Miss. 473, 474, 36 So. 1033, 1033 (1904) (rev'd on other grounds).

B. Majority's Interpretation
¶ 43. Judge Roberts's dissent calls into question the majority's remand and affirmance position and dismisses the majority's stance that an attempt is akin toand should be addressed by appellate courts much likea lesser-included offense. In my view, the majority merely suggests our attempt law should be interpreted and applied similarly to how our supreme court has addressed direct remands concerning lesser-included offenses. Reflecting on this approach, I note that Mississippi's statutory precedent for convictions on uncharged attempts and lesser-included offenses is rooted in the same law, section 99-19-5, which allows a finding of guilt for the charged crime, attempt to commit charged crime, or a lesser-included offense. I find this common origin particularly relevant considering our supreme court has held that a "lesser included offense need not be before the jury in order to apply the direct-remand rule" to affirm a conviction on the uncharged lesser offense. Shields v. State, 722 So.2d 584, 587 (¶ 17) (Miss.1998).
¶ 44. Further, this court's own precedent suggests the fact that the attempt was not charged in the indictment is immaterial. In Neal v. State, Judge Southwick, writing for our unanimous court, noted: "By statute [section 99-19-5], every indictment of a crime includes implied notice that the accused may be convicted of an attempt to commit that same crime." 936 So.2d 463, 468 (¶ 17) (Miss.Ct.App.2006) (citing Miss.Code Ann. § 99-19-5 (Rev. 2000)). In Neal, this court found the use of the word "attempt" in an indictment was mere surplusage, and the defendant was on notice that he could be convicted of *1106 the completed offense or an uncharged attempt. Id. at 469 (¶ 20); see also Eakes v. State, 665 So.2d 852, 860 (Miss.1995) (Supreme court held section 99-19-5 "allows a jury to convict of the crime charged in the indictment or of an attempt to commit the offense charged.").

C. The Federal Approach and Modifying Judgments
¶ 45. Federal precedent also supports the majority's approach. See United States v. Remigio, 767 F.2d 730, 733 (10th Cir.1985) ("The crime of attempt is a lesser included offense of the substantive crime," and "proof of the substantive crime at trial was proof of the lesser included offense of attempt."); see also United States v. Pino, 608 F.2d 1001, 1003 (4th Cir.1979) (indictment charging distribution of heroin would support conviction "on an attempt theory"); United States v. Brozyna, 571 F.2d 742, 746 (2d Cir.1978) (Conviction on indictment alleging acquisition of firearm, though proof showed only attempted acquisition, does not violate defendant's "right to be tried only on charges presented in an indictment."); United States v. Marin, 513 F.2d 974, 976 (2d Cir.1975) ("[A] defendant may be found guilty of an attempt to commit a substantive offense, whether or not the attempt was charged in the indictment, provided attempt is punishable."); 2 Wayne R. LaFave, Substantive Criminal Law § 11.5(c), at 249 (2d ed.2003) ("The courts are in general agreement that an attempt conviction may be had on a charge of the completed crime....").
¶ 46. In United States v. Castro-Trevino, 464 F.3d 536, 541-47 (5th Cir.2006), the Fifth Circuit Court of Appeals modified a judgment of conviction to reflect a conviction for attempted exportation of ammunition rather than the completed offense where a defendant smuggling ammunition from Texas to Mexico was apprehended short of the Mexican border. The Fifth Circuit affirmed the judgment as modified, noting that "a conviction for an attempt to commit the completed offense charged (or a conviction for some other lesser included offense of that charged), may properly be based on an indictment which alleges only the completed offense and does not mention attempt (or other lesser included offense of that charged)." Id. at 544.
¶ 47. The Fifth Circuit recognized: "When the facts support conviction of a lesser-included offense we can generally modify the judgment to reflect the lesser offense without detrimentally affecting the defendant's rights." Id. at 543.
¶ 48. Further, in United States v. Mitchell, 484 F.3d 762, 772-73 (5th Cir. 2007), the Fifth Circuit modified a judgment of conviction to reflect a conviction on an uncharged attempt. In Mitchell, a jury returned guilty verdicts against two cousins charged with possessing a firearm during a drug-trafficking offensepossession with intent to distribute crack cocaine. Id. at 766-68. On appeal, the cousins argued that, because the government did not find any cocaine during an armed robbery aimed at stealing drugs, it failed to prove they actually possessed cocaine. Id. at 771. The Fifth Circuit reasoned, as it did in Castro-Trevino, because the facts supported firearm possession in furtherance of an attempted possession of cocaine with intent to distribute, it "may modify the judgment to reflect such a conviction without affecting the defendants' substantial rights." Id. at 773.

D. Notice of Attempt Charge
¶ 49. Though federal courts require the attempt be punishable in the substantive *1107 statute in order to be actionable,[14] Mississippi's statutory scheme is far broader. Section 99-19-5 makes attempt punishable, not for a few select crimes, but, as the statute makes clear, "[o]n an indictment for any offense." Miss.Code Ann. § 99-19-5(1) (emphasis added). See also Neal, 936 So.2d at 468 (¶ 17) ("[E]very indictment of a crime includes implied notice that the accused may be convicted of an attempt to commit that same crime.").
¶ 50. Based on the supreme court's and this court's prior interpretation of the implied-notice provisions of section 99-19-5, I find, as the majority does, that the indictment here sufficiently placed Shaffer on notice he could be convicted of attempted exploitation of a child. And drawing from persuasive federal law and our supreme court's precedent for handling direct remands of convictions on lesser-yet-uncharged offenses, I find this court could have either directly remanded, as the majority did, or modified the judgment to reflect guilt on the lesser attempt offense, which carries the same penalties as a conviction for the completed crime, without detrimentally affecting Shaffer's substantial rights.
BARNES, J., JOINS THIS OPINION.
GRIFFIS, J., Dissenting:
¶ 51. The conviction of Justin David Shaffer under Mississippi Code Annotated section 97-5-33(6) (Rev.2006) should be affirmed. The evidence presented to the jury clearly and overwhelmingly proved that Shaffer enticed and solicited, through telephonic and computer communications, a person he believed to be a thirteen-year-old girl to have sex. Shaffer traveled from his home to meet this thirteen-year-old girl, and he had the sole intention of having sex with a thirteen-year-old girl.
¶ 52. I dissent from the majority opinion because I believe its analysis takes an unnecessary and imprudent legal route to achieve the same result that I reach. Said differently, but just as Judge Roberts has concluded in his dissent, I am of the opinion that the majority's analysis and conclusion that Shaffer's conviction may be affirmed on the lesser-included offense of attempted exploitation of a child is simply wrong. However, I do not join Judge Roberts's separate opinion.
¶ 53. Indeed, under the language used in Mississippi Code Annotated section 97-5-33(6), an "attempt" is not separate and apart from the criminal conduct but is instead specifically included in the language used in the definition of the criminal conduct. Shaffer's intended scheme was to entice and solicit Chloe, whom he knew or believed to be a thirteen-year-old girl, to meet him to have sex. Shaffer's scheme failed only because the true facts were not as he believed them to be. Shaffer's effort to commit the crime of sexual battery on a thirteen-year-old girl was prevented because he was communicating with an "undercover operative" instead of an actual thirteen-year-old girl. Mississippi Code Annotated section 97-5-33(8) authorizes the use of undercover operatives in the detection and investigation of this crime. Shaffer did not merely attempt to entice or solicit a thirteen-year-old girl to meet him for sexual relations; indeed, he completed the offense. I would affirm the jury's guilty verdict.
¶ 54. Shaffer was convicted of the crime of exploitation of a child, under Mississippi Code Annotated section 97-5-33(6), which provides:
No person shall, by any means including computer, knowingly entice, induce, persuade, seduce, solicit, advise, coerce, or *1108 order a child to meet with the defendant or any other person for the purpose of engaging in sexually explicit conduct.
¶ 55. This statute makes it against Mississippi law to "entice, induce, persuade, seduce, solicit, advise, coerce, or order a child to meet ... for the purpose of engaging in sexually explicit conduct." I find no Mississippi case that provides a definition of the words "entice," "induce," "persuade," "seduce," or "solicit." Blacks Law Dictionary (6th ed.1991) defines the terms as follows:
Entice. To wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or seduce. To lure, induce, tempt, incite or persuade a person to do a thing. Enticement of a child is inviting, persuading or attempting to persuade a child to enter any vehicle, building, room or secluded place with intent to commit an unlawful sexual act upon or with the person of said child.
Induce. To bring on or about, to affect, cause, to influence to an act or course of conduct, lead by persuasion or reasoning, incite by motives, prevail upon.
Persuade. To induce one by argument, entreaty, or expostulation into a determination, decision, conclusion, belief, or the like, to win over by an appeal to one's reason and feelings, as to doing or believing something, to bring oneself or another to a belief, certainty or conviction; to argue into an opinion or procedure.
Seduce. To induce to surrender chastity. To lead away. Seduction.
Seduction. The act of seducing. Act of man enticing woman to have unlawful intercourse with him by means of persuasion, solicitation, promises, bribes or other means without employment of force.
Solicit. To appeal for something; to apply to for obtaining something, to ask earnestly, to ask for the purpose of receiving, to endeavor to obtain by asking or pleading, ..., to try to obtain, ....
(Emphasis added). I will focus on the language "entice" and "solicit" because the definition of these terms clearly incorporate a person's attempt.
¶ 56. The evidence established that Shaffer believed Chloe was a thirteen-year-old girl. Shaffer lured and groomed her for his future exploitation and sexual favor. He wanted to meet with Chloe to have sex. The question for this Court to decide is whether this statute required that an actual child be at risk in the detection and investigation of this crime. I do not believe it was necessary. We must look at the evidence.
¶ 57. On June 29, 2006, Shaffer was in an Internet chatroom called "Mississippi2" operated by Yahoo!. Also, in the same chat room was Deanna Doolittle, a volunteer for the organization Perverted Justice. Doolittle entered the chat room using a profile for a fake identity, "Chloe," a thirteen-year-old girl who lived in Byram, Mississippi, in Hinds County. Chloe used the screen name "orlandoluvsme2," listed her age as 113 years old, and displayed the photographic image of a young woman, a teenager. Shaffer argues that Perverted Justice is "a private organization whose purpose is to use subterfuge and fake identities to catch men looking on the internet for minors with whom to meet for sex." Indeed, that is what they found in Shaffer.
¶ 58. Doolittle testified that, after Chloe exited the chat room, she received a private message from "cowboy39461." Doolittle responded to the private message using the profile name "orlandoluvsme2." The two chatted using Yahoo! Messenger that evening. During the chat, cowboy39461 asked orlandoluvsme2 to call him on his cell phone. At that point, another *1109 Perverted Justice volunteer, Kimberly Price, spoke briefly with cowboy39461 on the telephone. Price testified that her job was to be a verifier, which required that she obtain the name of the person calling and verify that this person was the same person chatting with orlandoluvsme2 on the Internet. In the telephone conversation, cowboy39461 confirmed that his name was "Justin," which he had disclosed in the Internet chat. Price represented that she was Chloe, with whom cowboy39461 had chatted.
¶ 59. After the short telephone conversation, Chloe and Justin resumed their Internet chat using Yahoo! Messenger. Later in that chat, cowboy39461 disclosed the he lived in Neely, Mississippi, in Greene County. During their chat, orlandoluvsme2 e-mailed pictures of herself to cowboy39461. Over several days of Internet chatting, orlandoluvsme2 and cowboy39461 discussed the possibility of a meeting. The chat contained some sexually explicit statements by cowboy39461. Cowboy39461 also revealed that his last name was "Shafer" and that he lived at "5908 Neely Avera Rd, Neely[, M]s 39461." Chloe and Justin also had a few telephone conversations.
¶ 60. On July 7, 2006, orlandoluvsme2 and cowboy39461 chatted again. This chat session also contained sexually explicit conversation. The chat carried over to July 8, as orlandoluvsme2 and cowboy39461 arranged to meet the next day. In a subsequent chat, orlandoluvsme2 and cowboy39461 arranged a telephone call to discuss their meeting.
¶ 61. The chat room transcripts evidence that cowboy39461 believed orlandoluvsme2 was a child. Further, the transcripts also reveal that cowboy39461 was making an effort to convince orlandoluvsme2 that: she could trust him; he loved her; and they should engage in sexual relations. There is nothing in the transcripts that would have lead cowboy39461 or Justin to believe they were having an online or telephone conversation with an adult.
¶ 62. Indeed, I quote at length and in detail from the transcript to show that Shaffer used the chat room to "entice" (i.e., "attempting to persuade") and "solicit" (i.e., "to ask for the purpose of receiving, to endeavor to obtain by asking or pleading, ..., to try to obtain"). The following are selected portions of the chat between Shaffer (cowboy39461) and Chloe (orlandoluvsme2), who Shaffer believed to be a thirteen-year-old girl.
 cowboy39461 gee I sure wish you
 were a bit older
 orlandoluvsme2 how come?
 cowboy39461 or I new your mom well
 orlandoluvsme2 y lol?
 cowboy39461 I'd come get ya
 orlandoluvsme2 come get me huh?
 cowboy39461 yeah
 . . . .
 cowboy39461 just dosen't feel like I'm
 talking to a 13 yr old
 orlandoluvsme2 aww ty i think
 cowboy39461 you are so cool and easy
 to talk to
 orlandoluvsme2 lol
 orlandoluvsme2 ya u r to
 cowboy39461 ty
 orlandoluvsme2 yvw
 cowboy39461 you are so sweet
 orlandoluvsme2 aww ty
 cowboy39461 don't laugh at me when
 I tell ya this but I keep wishing I was
 younger or you a bit older
 cowboy39461 lol
 orlandoluvsme2 how come?
 cowboy39461 I guess I enjoy talking
 to you so much
*1110
 orlandoluvsme2 ya ur fun to talk to to
 orlandoluvsme2 lol
 cowboy39461 you are easy to talk to
 and I feel relaxed
 orlandoluvsme2 kewl
 cowboy39461 if things were different,
 then we might could hang out sometimes
 cowboy39461 you know
 orlandoluvsme2 difrent?
 orlandoluvsme2 *diffrent?
 cowboy39461 yeah
 orlandoluvsme2 lol
 cowboy39461 different
 orlandoluvsme2 like wat?
 cowboy39461 you know what I mean
 cowboy39461 if you were older and I
 younger
 . . . .
 cowboy39461 you think you are sad, I
 am the one that is sad
 orlandoluvsme2 how come?
 orlandoluvsme2 don't b sad
 orlandoluvsme2 wat r u sad bout?
 cowboy39461 I find the sweetest girl
 I've ever met and she is 13
 orlandoluvsme2 awwww u r sooo
 sweet!
 cowboy39461 wouldn't you be sad if
 you were me
 orlandoluvsme2 i don't get y u r sad
 tho
 orlandoluvsme2 i thot u said u liked
 talkin to me
 cowboy39461 I wish I could take ya
 out and go do stuff but I can't
 . . . .
 cowboy39461 so ya do any thinking
 about when we should get together
 orlandoluvsme2 well u said we wuld
 eat n walk around mebbe go shoppin
 . . . .
 cowboy39461 ya want me to get a
 room in Jackson
 orlandoluvsme2 u said u were gonna
 . . . .
 cowboy39461 I want ya to spend the
 night with me if ya want
 cowboy39461 the hotel
 orlandoluvsme2 k
 . . . .
 cowboy39461 you must like me lots
 you want to spend the night with me
 don't ya?
 orlandoluvsme2 yah
 cowboy39461 you mean to tell me
 you're not just a bit scared or nervous
 about that
 orlandoluvsme2 lol
 . . . .
 cowboy39461 I want to be with you
 cowboy39461 what do you want
 orlandoluvsme2 omg do u wanna
 teach me omg!
 cowboy39461 yes
 orlandoluvsme2 k
 cowboy39461 do you want me to
 orlandoluvsme2 ya i relly like u
 orlandoluvsme2 wat kinda stuff u
 wanna teach me?
 cowboy39461 then say it, "Justin I
 want you to teach me"
 cowboy39461 do you want to learn everything
 there is
 cowboy39461 I want to more like
 show you
 orlandoluvsme2 justin i want u to
 teach me
 cowboy39461 show you how good I
 can make you feel
 cowboy39461 oh and ya have to say,
 "Justin, I want to be your girl and
 only your's"
 orlandoluvsme2 justin I want to be ur
 girl and only yours
*1111
 orlandoluvsme2 wat feels best tho?
 cowboy39461 what feels best is knowing
 you want me and are mine
 orlandoluvsme2 k
 cowboy39461 so ya want to be my girl
 Chloe?
 orlandoluvsme2 yah
 cowboy39461 :D
 orlandoluvsme2 lol so tell me wat ur
 gonna teach me cuz im curios
 cowboy39461 I am a very happy guy
 cowboy39461 how good it feels for me
 to touch you all over
 cowboy39461 massage you
 cowboy39461 make your feel very relaxed
 cowboy39461 how good it feels for me
 to go down on you
 orlandoluvsme2 down on me?
 cowboy39461 yeah down on you
 cowboy39461 lick,
 orlandoluvsme2 OH i kno now
 orlandoluvsme2 sorry i told u i don't
 kno lots of stuff
 cowboy39461 are you a cop, police, or
 work for the policy in any why or
 fation?
 orlandoluvsme2 huh?
 cowboy39461 lol
 cowboy39461 yes or no
 orlandoluvsme2 u think im a cop
 orlandoluvsme2 NO
 cowboy39461 lol
 cowboy39461 just checking
 orlandoluvsme2 jeez
 cowboy39461 can ya blame me
 cowboy39461 oral sex
 orlandoluvsme2 yah i get it now
 cowboy39461 me between your sexy
 soft legs with me tounge
 cowboy39461 you can't tell me you haven't
 thought about a gu doing that
 cowboy39461 do ya like to be kissed
 Chloe?
 orlandoluvsme2 ya I have been n ya i
 like it
 cowboy39461 I'm a very very good
 kisser Chloe
 cowboy39461 and I nice, kind, giving
 lover too
 orlandoluvsme2 awww i got buterflies
 cowboy39461 just think if we where in
 the room and you on the bed on your
 back
 orlandoluvsme2 k
 cowboy39461 having me spred your
 legs appart and working on that little
 kitty of your's
 cowboy39461 would ya like that
 orlandoluvsme2 yah taht sounds nice
 cowboy39461 believe me, you'll think
 it's better then nice
 cowboy39461 do you think you can
 handle me inside you?
 orlandoluvsme2 I dunno i think so
 orlandoluvsme2 don't it hurt?
 cowboy39461 not if i'm gentle with
 you
 cowboy39461 do ya want to try
 orlandoluvsme2 k good
 cowboy39461 I will have to take my
 time though
 orlandoluvsme2 yah as long as it don't
 hurt 2 bad
 cowboy39461 I'm a little thick and
 long
 orlandoluvsme2 relly?
 cowboy39461 yeah
 cowboy39461 is that ok
 orlandoluvsme2 yah its ok
 cowboy39461 you sure
 orlandoluvsme2 yah im sure
 orlandoluvsme2 just b gentl
*1112
 cowboy39461 you must have been
 thinking and wanting this for some
 time huh buy didn't have anyone ya
 felt ya could trust huh
 orlandoluvsme2 mebbe
 cowboy39461 you can trust me baby
 . . . .
 cowboy39461 you think you could
 ever love me
 orlandoluvsme2 yah prolly can
 cowboy39461 lol
 cowboy39461 or have love for me lets
 say
 orlandoluvsme2 i've nevah been in
 love
 cowboy39461 well it just comes
 cowboy39461 you might not ever "be"
 in love with me but ya might love
 being with me
 orlandoluvsme2 yah i bet u just get a
 fellin huh?
 cowboy39461 tell me if I have this
 right ok
 orlandoluvsme2 k
 cowboy39461 what you are looking for
 is a guy to be nice to you, make you
 feel safe, make you laugh, go have
 fund with, and most of all, teach
 you everything about sex and make ya
 realy, realy enjoy it a lot
 cowboy39461 I guy that you can have
 with and not worry about telling on
 you or getting you into trouble right
 orlandoluvsme2 well yah i don't wanna
 get in trubble
 orlandoluvsme2 I don't like bein
 grounded
 cowboy39461 I guy that can make you
 cum over and over
 cowboy39461 or talked about at
 schooll
 orlandoluvsme2 rite i don't want him
 tellin no body
 orlandoluvsme2 ur not conna tell no
 one rite?
 cowboy39461 then I am your man
 cowboy39461 who would li tell
 orlandoluvsme2 kewl
 cowboy39461 do you know the trouble
 I can get in if I get caught haveing
 sex with you?
 orlandoluvsme2 not relly
 orlandoluvsme2 i kno u cant get
 grounded tho
 orlandoluvsme2 lol
 cowboy39461 lol
 cowboy39461 I wish that was it
 cowboy39461 like I'd do to jail
 cowboy39461 prison
 orlandoluvsme2 omg!
 cowboy39461 locked up and thrown
 away
 orlandoluvsme2 well im not gonna tell
 neone
 orlandoluvsme2 k
 cowboy39461 now ya see why I ask
 what I ask you and have to be sure
 and careful
 cowboy39461 and that's why i had to
 ask if you were a cop
 orlandoluvsme2 oic kk i get it now
 orlandoluvsme2 duh im sorry
 cowboy39461 I have everything to
 loose baby bing with you so that
 should tell you something and tell you
 how much I like you if I am willing to
 risk my life for you right
 orlandoluvsme2 yah u kno i like u 2
 rite?
 orlandoluvsme2 lots and lots
 cowboy39461 yep
 orlandoluvsme2 good
 orlandoluvsme2 brb gotta p
 orlandoluvsme2 k back
 orlandoluvsme2 u still there
 cowboy39461 yes baby
*1113
 orlandoluvsme2 k good
 cowboy39461 so now ya understand
 why I have to be careful too right
 orlandoluvsme2 yah i do more now
 cowboy39461 I'm taking all the risk
 here babe
 cowboy39461 so if we both are cool
 and do things right, there won't be
 any problem
 orlandoluvsme2 im not gonna tell
 neone
 orlandoluvsme2 and ur not
 orlandoluvsme2 so wats the prob
 cowboy39461 you can't even tell your
 best friend because they'll tell someone
 ya know
 cowboy39461 everyone talks remember
 that
 orlandoluvsme2 its none of there
 b'ness
 cowboy39461 it would be like you
 leading a double life in a way
 cowboy39461 cool
 cowboy39461 that's my girl
 orlandoluvsme2 yah its kewl
 cowboy39461 you are ready to have
 some fun and some really, really great
 sex aren't you ?
 orlandoluvsme2 yah it sounds kewl
 orlandoluvsme2 doncha think?
 cowboy39461 loll
 cowboy39461 yep
 orlandoluvsme2 so r u comin 2morow
 tehn?
 cowboy39461 but we need to work on
 how you discribe your feelings and
 such
 cowboy39461 yep I am
 orlandoluvsme2 k
 cowboy39461 may be toward the late
 afternoon but I will
 . . . .
 cowboy39461 this is a test for you
 cowboy39461 so open up a bit
 orlandoluvsme2 I don't like tests i do
 horibel on em
 orlandoluvsme2 lol
 cowboy39461 you do what to turn me
 on as much as I want to turn you on
 right
 cowboy39461 then I need you to go
 into a bit of detail for me please
 cowboy39461 it'll help you when we
 do
 orlandoluvsme2 k lemme think bout
 wat to say so i don't look stoopid
 cowboy39461 and very detailed and
 graffic
 cowboy39461 lol
 cowboy39461 paleeeeeees
 cowboy39461 lol
 cowboy39461 I did it for you right
 cowboy39461 so ...
 orlandoluvsme2 i kno
 orlandoluvsme2 i just don't kno wat 2 say cuz I've nevar done
 this
 orlandoluvsme2 n i feel stoopid
 orlandoluvsme2 cuz i don't kno
 orlandoluvsme2 i don't like feelin
 stoopid
 orlandoluvsme2 I mean i wanna kno
 how it feels n wat its like
 cowboy39461 listen, by you doing this
 for me it'll show me for real you are
 you and not a cop and I must know
 ok. its my life and I'm not asking too
 much of you am I? you won't sound
 stupid
 orlandoluvsme2 how do i kno wat 2
 say w out knoing wat im doin
 cowboy39461 lol
 cowboy39461 you want me to lick you
 right
 cowboy39461 finger you right
 cowboy39461 get you wet right
*1114
 cowboy39461 play with you tits right
 cowboy39461 get you really turned on
 right
 orlandoluvsme2 yah
 cowboy39461 well just let your mind
 go and type it out
 orlandoluvsme2 k i want u to lick me
 down there n touch my privates
 cowboy39461 I hope you will moan
 and grown with great pleasure when I
 am making you feel good
 cowboy39461 lol
 orlandoluvsme2 n play w my bewbs
 cowboy39461 now you are going to
 have to do better than that
 cowboy39461 lol
 orlandoluvsme2 n show me how to
 make u happy
 cowboy39461 boobs, tits, pussy, fuck
 me
 cowboy39461 lol
 cowboy39461 thouse words
 cowboy39461 just say it please baby
 orlandoluvsme2 k i want u to lick my
 pussy n my tits n fuck me like u said
 orlandoluvsme2 that was weird typing
 it out
 orlandoluvsme2 lol
 cowboy39461 you did great
 orlandoluvsme2 now ur not gonna
 talk
 orlandoluvsme2 do u kno how hard
 taht was for me?
 cowboy39461 and don't ya like now
 that ya can say what ya want
 cowboy39461 aww baby
 cowboy39461 you did great
 orlandoluvsme2 u don't like me now?
 cowboy39461 but did it turn you on a
 bit
 cowboy39461 I love you
 orlandoluvsme2 u love me?
 orlandoluvsme2 awwww
 orlandoluvsme2 i think i love u 2
 cowboy39461 do you love me a little
 cowboy39461 aww
 cowboy39461 I know I love you you
 are the sweetest and you are my girl
[sic]
¶ 63. On July 8, 2006, Chloe and Justin had a series of telephone calls in which they discussed their meeting later in the day. During these conversations another Perverted Justice volunteer, Tricia Bootsma, pretended to be Chloe. The conversations were also sexually explicit. Shaffer arrived at the location where Chloe and Justin arranged to meet at approximately 6:00 p.m., on July 8, 2006, where he was met by officers with the Hinds County Sheriff's Department and arrested.
¶ 64. Shaffer claims that his motion for a directed verdict should have been granted because the State failed to prove an essential element of the crime charged there was no actual child involved in Shaffer's conduct. A "[c]hild" is defined as "any individual who has not attained the age of eighteen (18) years." Miss.Code Ann. § 97-5-31(a) (Rev.2006). Shaffer argues that even though he thought he was communicating with "Chloe," a thirteen-year-old girl, in reality, he was communicating with Doolittle, a twenty-nine-year-old woman. Shaffer's trial attorney made this same argument before the circuit court during his motion for a directed verdict. The prosecutor responded to the motion by citing section 97-5-33(8). At the time Shaffer was indicted, 97-5-33(8) provided:
The fact that an undercover operative or law enforcement officer was involved in the detection and investigation of an offense under this section shall not constitute a defense to a prosecution under this section.
*1115 ¶ 65. The State argues that under this statutory language Shaffer's conduct constituted the crime of exploitation of a child even though Shaffer did not communicate with an actual minor child. The State argues that Doolittle was an undercover operative involved in the detection and investigation of the offense; thus, it is no defense that Shaffer's contact was with Doolittle instead of a minor.
¶ 66. "It is well settled that when a court considers a statute passed by the Legislature, the first question before the Court is whether the statute is ambiguous. If the statute is not ambiguous, the court should interpret and apply the statute according to its plain meaning without the aid of principles of statutory construction." Finn v. State, 978 So.2d 1270, 1272 (¶ 8) (Miss.2008) (quoting Harrison County Sch. Dist. v. Long Beach Sch. Dist., 700 So.2d 286, 288-89 (¶ 10) (Miss.1997)).
¶ 67. Under the statute, an act against an "actual child" would certainly be a criminal offense. Subsections six and eight must be read together. Otherwise, law enforcement could only detect and investigate this crime by using actual children as undercover operatives. Certainly, this was not the intention of the Legislature.
¶ 68. In State v. Coonrod, 652 N.W.2d 715 (Minn.App.2002), the Minnesota Court of Appeals considered the appeal of a defendant who had used a computer to solicit sex from a person he thought was a fourteen-year-old girl, but she was actually an adult police officer. The court addressed the use of "actual" children in sting operations, stating:
"Jaime14" was not a corporation or other legal entity. But like those entities, she was not a flesh-and-blood human being either. [Paula] Coonrod points to no language in the statute, or in the case law, that excludes a fictional persona such as "Jaime14" from the definition of a "person," or a "specific person." This court cannot supply language that the legislature has purposefully omitted or overlooked. The courts will not infer that the legislature intended an absurd result. A few examples will illustrate the point. "Sting," or "undercover," or "decoy" operations are not uncommon. When a drug dealer has drugs to sell and is "sucked" into an undercover operation, the second he hands over the drugs to an undercover agent in exchange for money, the badge and handcuffs come out, and two things will happen: (a) he will not get to keep the money, and (b) he will not be able to argue that he can be guilty at most of mere possession rather than possession with the intent to sell, or a completed sale, because he had no chance to execute a bona fide sale. Exactly the same is true with undercover operations aimed at arresting prostitutes or their "johns." Law enforcement would be in a high state of consternation if real prostitutes and real johns had to be used and if the possibility of a full successful completion of the transaction had to be present! Coonrod's argument, followed to its logical extreme, would demand that the [S]tate, when investigating the type of crime he is charged with, employ actual young girls to type the chat room text, to meet with the suspect, and to follow through with everything needed to get the suspect to the point of an overt act. We simply will not read that into the law.
Id. at 723 (internal citations and footnote omitted).
¶ 69. I conclude that section 97-5-33 is unambiguous. The plain language of subsection eight provides that it is no defense that an undercover operative was involved in the detection of the offense. Shaffer frames his argument to suggest that the *1116 elements of the crime were not proven because no actual child under the age of eighteen was involved. But, there was no child involved because of the involvement of an undercover operative from Perverted Justice, a practice which is allowed by statute.
¶ 70. An "attempt" is included in the definition of the language of Mississippi Code Annotated section 97-5-33(6). It is unnecessary and legally incorrect for the majority to conclude that Shaffer's conviction may be affirmed on the lesser-included offense of attempted exploitation of a child.
¶ 71. The evidence presented to the jury was sufficient to convict Shaffer under Mississippi Code Annotated section 97-5-33(6). Shaffer's intended scheme was to entice or solicit a thirteen-year-old girl, whom he knew as Chloe, to meet him to engage in sexual relations. Shaffer failed only because the true facts were not as he believed them to be. Shaffer did not merely attempt to entice or solicit a thirteen-year-old girl to meet him for sexual relations; indeed, he completed the offense.
¶ 72. With great respect to my colleagues, I would affirm the jury's verdict and conviction of Shaffer.
LEE AND MYERS, P.JJ., JOIN THIS OPINION. IRVING, J., JOINS THIS OPINION IN PART.
ROBERTS, J., Dissenting:
¶ 73. Justin Shaffer thought he solicited sexual contact with a thirteen-year-old girl. In reality, he had been communicating with three adult volunteers with the organization "Perverted Justice." Specifically, the people with whom Shaffer communicated were twenty-nine, twenty-one, and nineteen years old. According to the relevant Mississippi statute that existed when Shaffer propositioned the adults, it was not illegal to sexually proposition adultseven if one mistakenly believes he or she was propositioning a child.
¶ 74. We can all agree that Shaffer's subjective intent was absolutely reprehensible. Be that as it may and as much as we may desire otherwise, the Mississippi Legislature did not define sexual solicitation of an "adult posing as a child" as a felony offense. Although the majority strives mightily to salvage this conviction, it does so according to a rationale involving an attempt theory that was neither charged nor sufficiently stated in the indictment. Additionally, the Greene County Circuit Court expressly refused to instruct the jury that it could find Shaffer guilty of attempted exploitation of a child. Even so, the majority reverses the judgment of the circuit court and, in effect, finds Shaffer guilty of a crime for which he was not indicted and according to a theory that was not put before the juryall under the "direct-remand rule." I find this conviction is simply unsalvageable. Therefore, I must dissent. With respect for the majority, I would reverse the judgment of the circuit court, render a judgment of acquittal, and discharge Shaffer.
¶ 75. The relevant facts of this case are largely undisputed. We are called upon to resolve a question of law regarding the Mississippi Legislature's intent as stated by the language of Mississippi Code Annotated section 97-5-33(6) (Rev.2006). The precise question at issue is one of first impression in this state.
¶ 76. "It is bedrock law in Mississippi that criminal statutes are to be strictly construed against the State and liberally in favor of the accused." Coleman v. State, 947 So.2d 878, 881 (¶ 10) (Miss.2006) (citing McLamb v. State, 456 So.2d 743, 745 (Miss.1984)). In Coleman, the Mississippi Supreme Court further stated that: *1117 "When the words of a statute are plain and unambiguous[,] there is no room for interpretation or construction, and we apply the statute according to the meaning of those words." Id. (citation omitted). "It is only when a statute is unclear or ambiguous that we look beyond the language of the statute to determine its meaning." Id. (citations omitted). "The court has no right to add anything to or take anything from a statute, where the meaning of the statute is clear.... The law is that criminal statutes must be strictly construed. Such has been the law from time immemorial." Id. (citation omitted).
¶ 77. Section 97-5-33(6) states that: "No person shall ... knowingly entice, induce, persuade, seduce, solicit ... a child to meet ... for the purpose of engaging in sexually explicit conduct." Within the context of section 97-5-33(6), a "child" is defined as someone "who has not attained the age of eighteen (18) years." Miss. Code Ann. § 97-5-31(a) (Rev.2006). At the time that Shaffer communicated with the adult volunteers, section 97-5-33(8) stated that: "The fact that an undercover operative or law enforcement officer was involved in the detection and investigation of an offense ... shall not constitute a defense to a prosecution under this section." Shaffer's central argument is that there was insufficient proof that he solicited a child because he never communicated with a child, although he thought he did.
¶ 78. The majority finds that Shaffer could not have been found guilty of exploitation of a child because he never communicated with a child. I agree with the majority in that regard. However, the majority then goes forward and concludes not only that Shaffer could have been found guiltybut also that he is guilty of attempted exploitation of a child.
¶ 79. An attempt to commit a crime consists of three elements: "(1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission." Greenwood v. State, 744 So.2d 767, 769 (¶ 7) (Miss.1999). "[M]ere intention to commit a crime will not sustain a conviction for an attempt." Id. at 770 (¶ 7). Section 97-5-33(6) does not include a provision by which one may be found guilty of attempted solicitation of a child. Instead, section 97-5-33(6) prohibits an adult from certain conduct intended to facilitate a meeting between an adult and a child "for the purpose of engaging in sexually explicit conduct." Specifically, section 97-5-33(6) prohibits an adult from behavior intending to "entice, induce, persuade, seduce, solicit, advise, coerce, or order" a child to meet "for the purpose of engaging in sexually explicit conduct."
¶ 80. Shaffer may have attempted to meet with a child for the purpose of engaging in sexually explicit conduct, but he did not attempt to "entice, induce, persuade, seduce, solicit, advise, coerce, or order" a child to meet. In my judgment, the gravamen of the offense is the solicitation for sexually explicit conduct. Each act described in section 97-5-33(6) is, in and of itself, an attempt to persuade the recipient to engage in sexual conduct. The specific acts prohibited by section 97-5-33(6) are enticing, inducing, persuading, seducing, soliciting, coercing, or ordering a child to meet with the adult for the purpose of engaging in sexual conduct. Once the accused commits any of those acts, the crime is complete. Neither the persuasiveness of the accused nor the acceptance by the "victim" is relevant. In that regard, section 97-5-33(6) penalizes any attempt to persuade sexual conduct with a child. In effect, the majority finds that Shaffer is guilty of "attempting" to attempt (solicit) sexual conduct with a child. In this regard, *1118 I find the following conclusion of the Florida Supreme Court very persuasive: "If a crime is itself an attempt to do an act or accomplish a result, there can be no lesser[-]included offense of attempting to commit that crime." Pagano v. State, 387 So.2d 349, 350 (Fla.1980).
¶ 81. To best illustrate the problem, if Shaffer had typed a sexually explicit invitation to "Chloe" on his computer but had pressed "delete" instead of "send," no member of this Court would argue that Shaffer had attempted to solicit sexually explicit conduct with someone even though he had committed an "overt act" by typing the message. On the other hand, had Shaffer pressed "send," no member of this Court would disagree that he had solicited sexually explicit conduct from "Chloe" and that the crime had been completed. Thus, Shaffer fully committed and completed the primary element of the offensean enticement or solicitation of sexually explicit conduct. That is, Shaffer completed the solicitation or "attempt" element of the crime. When a crime has been completed, one may not be convicted for an attempt to commit that crime. Mason v. State, 430 So.2d 857, 858 (Miss.1983). The sound logic of this principle is self-evident. When the principal crime has been completed, any conduct constituting an attempt to commit that crime merges into the principal offense. Punishing an offender for both an attempt to commit the primary offense as well as for actual commission of that offense violates the constitutional prohibition against double jeopardy.
¶ 82. According to the State, it would be absurd to interpret section 97-5-33(6) as requiring that the government use actual children to detect people trying to exploit children. The State cites Eason v. State, 994 So.2d 785 (Miss.Ct.App.2008) to support its position. Steven Walter Eason was charged with and convicted of sexual battery of two children. Id. at 788 (¶ 4). The evidence at trial indicated that as to count IV, Eason did not personally engage in sexual penetration of a child. Id. Instead, he forced one child to sexually penetrate another child. Id. at (¶ 7). In Eason, six members of this Court also held that Eason's conviction on Count IV should be affirmed by considering Eason as an accessory-before-the-fact because Eason aided, encouraged, and assisted in the offense and was, therefore, eligible to be punished as though he was the principal offender. Id. at 792 (¶ 21) (Roberts, J., specially concurring). I can find no basis in Eason that justifies that State's reliance upon it as support for its argument.
¶ 83. In Nevada v. Colosimo, 122 Nev. 950, 142 P.3d 352, 359 (2006), the Nevada Supreme Court reviewed a trial court's decision to dismiss an indictment that charged Anthony Colosimo with using technology to lure a child away from the child's parents. Colosimo "corresponded through the Internet with an undercover police detective ... whom Colosimo believed to be a fourteen-year-old girl." Id. at 354. Colosimo was apprehended after he arrived at a predetermined meeting location and was charged with violating NRS 201.560(1), which stated that:
a person shall not knowingly contact or communicate with or attempt to contact or communicate with a child who is less than 16 years of age and who is at least 5 years younger than the person with the intent to persuade, lure, or transport the child away from his home or from any location known to his parents.
Id. at 354-55. NRS 201.560(4)(a) addressed violations or attempted violations of NRS 201.560(1) by using a computer with the intent to engage in sexual conduct with the child. Id. at 355. The Nevada trial court dismissed the indictment against Colosimo and the State appealed. *1119 Among other reasons, the trial court found that dismissal was appropriate because "the State could not prove the elements of the crime charged since no actual minor, or her parents, ever existed." Id. The Nevada Supreme Court affirmed the trial court's dismissal.
¶ 84. In so doing, Colosimo mentioned similar statutes from other jurisdictions. Id. at 359 n. 37. According to Colosimo, "similar luring statutes in other states permit enforcement by police sting operations by either identifying intended victims with language such as `a person the adult believes to be a minor.'" Id. (citing N.D. Cent.Code § 12.1-20-05.1(2) (Supp.2005); W. Va.Code Ann. § 61-3C-14b (2005)); See also Minn.Stat. Ann. § 609.352(2) (2000). Our section 97-5-33 does not include any such provision. Colosimo further noted that, alternatively, some jurisdictions "include an express provision that it is not a defense that the intended victim was a law[-]enforcement officer posing as a minor." Colosimo, 142 P.3d at 355 n. 37 (citing Ariz.Rev.Stat. Ann. § 13-3554(B) (Supp.2005); N.M. Stat. Ann. § 30-37-3.2(B) (Supp.2006)). Finally, Colosimo noted that some state statutes use both methods. Id. (citing Idaho Code Ann. § 18-1509A(1), (3) (2004); Ohio Rev.Code Ann. § 2907.07(A), (C)(2) (2004); Utah Code Ann. § 76-4-401(1), (2) (2003)). Shaffer communicated with "Chloe" during June and July 2006. During that time, section 97-5-33(8) merely stated that an undercover operative's involvement "shall not constitute a defense to prosecution." It did not include language that addressed adults posing as children. In fact, section 97-5-33(6) contained no provisions related to either method of specifically addressing circumstances in which an adult poses as a child during a solicitation of sexual conduct from another adult.
¶ 85. The Arizona Supreme Court faced a similar issue in Mejak v. Granville, 212 Ariz. 555, 136 P.3d 874 (2006). Jeremy Mejak solicited sexual contact from a news reporter who pretended to be a thirteen-year-old girl. Id. at 875 (¶ 3). At that time, Arizona law prohibited "offering or soliciting sexual conduct with another person knowing or having reason to know that the other person is a minor." Id. at (¶ 1) (citing Ariz.Rev.Stat. Ann. § 13-3554(A) (Supp.2003)). Arizona law also stated that: "It is not a defense to a prosecution... for luring a minor if the other person was a peace officer posing as a minor." Id. (citing Ariz.Rev.Stat. Ann. § 13-3554(B) (Supp.2003)). Mejak unsuccessfully moved to dismiss the indictment against him. Id. at (¶¶ 4-5). On appeal, the Arizona Supreme Court held that "when the person solicited is an adult posing as a minor, but is not a peace officer... a person cannot be charged with luring." Id. at (¶ 2). In so doing, the Arizona Supreme Court stated as follows:
First, subsection (A) requires that the person charged with the crime of luring "know or have reason to know that the person being lured is a minor." The use of the phrase "is a minor" suggests that the crime cannot be committed without the luring of an actual minor. Second, subsection (B) prevents a defendant from escaping criminal responsibility if the person lured is "a peace officer posing as a minor." Read in conjunction with subsection (A), this provision further supports the conclusion that unless the purported victim is a peace officer posing as a minor, the crime of luring requires that an actual minor be lured.
Third, subsection (C), the penalty provision of A.R.S. § 13-3554, states that "if the minor is under fifteen years of age" the crime is punishable under the provisions of A.R.S. § 13-604.01(I) (Supp.2003), a subsection of the sentencing *1120 statute for Dangerous Crimes Against Children. The use of the phrase "the minor" in subsection (C) signals the legislature's intention that, unless subsection (B) applies, the statute is violated only when an actual minor is lured. Thus, when § 13-3554 is considered as a whole, the language requires that the person lured be a minor, or a peace officer posing as a minor, before a person can be charged with luring a minor for sexual exploitation.
Id. at 876 (¶¶ 12-13) (internal citations and footnote omitted). Even so, the Arizona Supreme Court also stated that Mejak could have been charged with "attempted luring or attempted sexual conduct with a minor." Id. at 875 n. 1. Despite the Arizona Supreme Court's finding that Mejak could have been charged with "attempted luring," the Arizona Supreme Court held as follows:
The State ... charged Mejak not with attempt, but with the completed offense of luring. But a defendant cannot be held criminally responsible for a completed crime when it is impossible to commit the offense.... The luring statute requires that an actual minor or a peace officer posing as a minor be lured. Because the person Mejak lured was not a minor or [a] peace officer posing as a minor, he could not violate the criminal statute under which he was indicted.
Id. at 878 (¶ 21).
¶ 86. The majority's rationale hinges on the concept that Shaffer was guilty of attempted exploitation of a childwhich the majority considers to be a lesser-included offense of exploitation of a child. The majority notes that Mississippi Code Annotated section 99-19-5(1) (Rev.2006) sets forth that: "On an indictment for any offense[,] the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense ... without any additional count in the indictment for that purpose." (Emphasis added). Furthermore, Mississippi Code Annotated section 97-1-7 (Rev.2006) provides that:
Every person who shall design and endeavor to commit an offense, and shall do any overt act toward the commission thereof, but shall fail therein, or shall be prevented from committing the same, on conviction thereof, shall, where no provision is made by law for the punishment of such offense, be punished as follows:... if the offense attempted be punishable by imprisonment in the penitentiary, or by fine and imprisonment in the county jail, then the attempt to commit such offense shall be punished for a period or for an amount not greater than is prescribed for the actual commission of the offense so attempted.
¶ 87. Even if Shaffer can be convicted of attempted exploitation of a child, section 99-19-5 does not relax the requirement that a conviction for attempt must arise from an indictment that charges an overt act in furtherance of the attempt. If an accused is to be convicted of an attempted crime, the "charging document"an indictment or a criminal informationis required to satisfy two elements: "(1) the intent to commit the offense, and (2) an overt act toward its commission." Neal v. State, 936 So.2d 463, 467 (¶ 13) (Miss.Ct. App.2006) (quoting Maxie v. State, 330 So.2d 277, 277 (Miss.1976)).
¶ 88. The indictment against Shaffer reads as follows:
Justin David Shaffer ... did unlawfully, willfully, and feloniously[,] through the use of messaging sent via a computer and cellular telephone[,] knowingly entice, induce, persuade, seduce, solicit, advise, coerce, or order a child under the age of 18 years, to meet with him for the *1121 purpose of engaging in sexually explicit conduct....
The indictment certainly did not claim that Shaffer attempted to perform any of the acts prohibited by section 97-5-33(6). This Court has held that a criminal information alleging that an accused had used violencewithout describing the specific act of violencewhile attempting to take a victim's money did not charge an overt act in furtherance of a crime; therefore, the information did not properly charge attempted simple robbery. Neal, 936 So.2d at 467 (¶ 13). Here, the indictment merely alleged that Shaffer had sent messages "via a computer and cellular telephone." The indictment did not describe any specific act by which Shaffer attempted to persuade an undercover operative posing as a child to meet him. The indictment did not reference any specific message Shaffer had allegedly sent. The Mississippi Supreme Court has held that "words specifically describing the overt acts are mandatory in any indictment for attempt." Watson v. State, 483 So.2d 1326, 1328 (Miss.1986) (citation omitted). "An indictment charging the essential elements of a crime must be served on a defendant in order for a court to obtain subject[-]matter jurisdiction over the subject of a particular offense." Neal, 936 So.2d at 466 (¶ 7).
¶ 89. However, even if the indictment properly charged Shaffer with an overt act in furtherance of a crime, the jury was not instructed that it could convict Shaffer for any attempted exploitation of a child. Instead, the circuit court explicitly refused to instruct the jury pursuant to the prosecution's proffered instruction S-7 on attempt. The circuit court's refusal of the prosecution's proffered jury instruction on attempt has not been raised as an issue on appeal.
¶ 90. With all of the advantages of hindsight, we may wonder why the Legislature crafted section 97-5-33(6) in a way that would not punish Shaffer's behavior as an exploitation of a child. The language from section 97-5-33(8), prior to its amendment, appears to be the Legislature's effort to minimize, curtail, or possibly destroy a defendant's attempt to use "entrapment" as a successful defense to a charge of solicitation of a child. Any jurist recognizes that at least one law-enforcement officer is "involved" in the detection and investigation of most, if not all, felony cases. Moreover, the affirmative defense of entrapment often lends itself well to defendants caught sexually soliciting children on the Internet. It is possible that the Legislature did not want adults who were not law-enforcement officers pretending to be children communicating with people in an effort to tempt them to commit crimes. Be that as it may, whether for moral reasons or simply for self-preservation, Shaffer occasionally expressed a reluctance or reservation to meet with "Chloe" for sex. When Shaffer did so, the volunteers with Perverted Justice arguably encouraged Shaffer to go forward with their plans to have sex. A Perverted Justice volunteer in response to Shaffer's purported reluctance once even professed that she, acting as "Chloe," was in love with Shaffer. It is not outside the realm of possibilities to conclude that the Legislature did not want to authorize private adult "volunteers" surfing the web pretending to be susceptible children trying to catch adults not otherwise predisposed to commit the offense. For whatever reason, the Legislature drafted section 97-5-33(6) clearly to require solicitation of minors younger than eighteen years old.[15]
*1122 ¶ 91. Section 97-5-33(6), as written at the time Shaffer communicated with adults who posed as a child, did not contain any provision that turned on what Shaffer believed. Furthermore, section 97-5-33(6) only allowed for a conviction where the proof demonstrated, beyond a reasonable doubt, that the accused solicited a child defined as someone less than eighteen years old. Although section 97-5-33(8) precluded raising a defense that an undercover operative was "involved," Shaffer did not raise an affirmative defense. He did not call any witnesses. He presented no proof whatsoever. He simply moved to dismiss after the prosecution rested its case-in-chief and argued that, assuming that all of the prosecution's evidence and the favorable inferences that arise from that evidence were true, the prosecution presented insufficient evidence that he committed the offense.
¶ 92. I cannot reach the result the majority creates. The indictment did not allege an overt act. What overt act in furtherance of an attempt did the jury conclude that Shaffer had committed? Apparently, only the majority knows, because the jury found none. Solicitation is, by definition, an attempt to persuade. The majority's attempt theory was not presented to the jury. The jury did not return a verdict finding Shaffer guilty of attempted solicitation of a minor. Instead, the majority finds Shaffer "guilty of attempted exploitation." The circuit court did not instruct the jury on the applicable law of the majority's attempt theory. Even under the questionable assumption that attempted exploitation of a child is, somehow, a lesser-included offense of child exploitation, I know of no authority that allows the majority to proceed as it does.
¶ 93. The specially concurring opinion cites Eakes v. State, 665 So.2d 852 (Miss. 1995), apparently as authority for the proposition that Shaffer may be convicted for an attempt without the necessity of a count in the indictment that specifically charges an attempt. I have no dispute with the specially concurring opinion's authority itself. This dissenter presided over the trial that led to the appeal in Eakes. As the author of the specially concurring opinion notes, in that case, the prosecution moved to amend Count IV of the indictment to include an attempted sexual-battery charge. Eakes, 665 So.2d at 859. The amendment did not prejudice the defendant in Eakes. Id. at 860. Consequently, the indictment, as amended, included language that charged an overt act in furtherance of the principal crime. The jury was specifically instructed on the elements necessary to convict the defendant for an attempt to sexually batter a child. Id. at 871. Importantly, the jury found the defendant in Eakes guilty of attempted sexual battery of a childnot an appellate court. Id. at 872. Here, no one sought to amend the indictment against Shaffer. The indictment in this case was never amended, and it never included a charged overt act in furtherance of a principal crime.
¶ 94. A final matter bears discussion. The majority remands this matter to the circuit court under the direct-remand rule. The direct-remand rule applies only in criminal cases in which an appellate court determines that the evidence is legally insufficient to support a conviction for the *1123 primary offense, but it is sufficient to support a conviction for a lesser-included offense and the potential punishment for that lesser-included offense is less harsh than the potential punishment for the primary offense. See, e.g., Wade v. State, 748 So.2d 771, 777 (¶ 20) (Miss.1999). The majority does so pursuant to Shields v. State, 722 So.2d 584, 587 (¶ 17) (Miss.1998), which held that there was sufficient evidence to find an accused guilty of a lesser-included offense without instructing the jury that it could find an accused guilty of that crime. Clonelle Shields was found guilty of aggravated assault. Id. at 584 (¶ 1). On appeal, the State conceded that there was insufficient evidence to support Shields's conviction for aggravated assault. Id. at 585 (¶ 3). However, the State successfully argued that there was sufficient evidence to support a conviction for the lesser-included offense of simple assault. Id. at 587 (¶ 18). Shields does not minimize the requirement that, to find an accused guilty of attempt, the indictment against the accused must include language alleging that the accused had committed some overt act in furtherance of a principal crime. Be that as it may, even if I agreed with the majority's resolution, I would not find it necessary to remand the matter to the circuit court for resentencing. A conviction for an attempted violation carries the exact same penalty as a completed violation. Miss.Code Ann. § 97-1-7. Obviously, the circuit court was fully aware Shaffer had, in fact, solicited adults instead of a child. It follows that it is unnecessary to remand. Accordingly, I respectfully dissent.
NOTES
[1] Perverted Justice has volunteers who have young-sounding voices. The volunteer conducting the online chat contacts one of these designated volunteers and requests that they make a call posing as the minor.
[2] In United States v. Ramos-Sanchez, 483 F.3d 400, 403-04 (5th Cir.2007), the Fifth Circuit found the offense of indecent solicitation of a minor by "soliciting or enticing a minor to perform an illegal sex act" constituted sexual abuse of a minor; thus, it constituted a crime of violence. The court explained that indecent solicitation of a child constituted abuse because of psychological harm it can cause, even if any resulting sexual conduct is consensual. Id. at 403. The offense of indecent solicitation at its core prohibits enticing or soliciting a child to commit or to submit to an unlawful act. The court stated that because of a minor's "inexperience, they are vulnerable to exploitation and coercion in their sexual interactions." Id. (citing Michelle Oberman, Regulating Consensual Sex with Minors: Defining a Role for Statutory Rape, 48 Buff. L.Rev. 703, 704 (2000)). The court concluded in ascertaining that "[s]oliciting or enticing a minor into sex takes advantage of the same vulnerabilities," causing psychological harm. Id. at 403.
[3] The State indicted Shaffer in 2006; therefore, we apply the statutory language in effect at that time. Our jurisprudence holds that:

in litigation between the state and an individual, where the operative statute has been repealed or amended and the litigation arises out of a pre-repeal, pre-amendment transaction or occurrence, the individual may claim and be given the benefit of the prior law in effect at the operative time where he regards it more favorable to him. But the converse is not necessarily so. Unless the state holds a contract or otherwise has a vested right, a repealed or amended statute will ordinarily not be enforced against an individual where he regards it as less favorable to him.
State ex rel. Pittman v. Ladner, 512 So.2d 1271, 1277 (Miss.1987).
[4] Subsection eight was amended in 2007. The House bill proposing this amendment was entitled: "An Act to Amend Section 97-5-33, Mississippi Code of 1972, to Clarify Undercover Detection in the Exploitation of Children Cases; and for Related Purposes." Section 97-5-33(8) in its 2007 amended form now reads: "The fact than an undercover operative or law enforcement officer posed as a child or was involved in any other manner in the detection and investigation of an offense under this section shall not constitute a defense to a prosecution under this section." Miss.Code Ann. § 97-5-33(8) (Supp.2009) (emphasis added).
[5] In Meek, the Ninth Circuit Court of Appeals found the evidence at trial sufficient to support the conviction for the use of the Internet to attempt to induce a minor to engage in sexual activity, even though the minor with whom the defendant communicated was actually an undercover officer. Id. However, the defendant believed he was communicating with a minor through sexually explicit messages via the Internet. Meek, 366 F.3d at 717-20.
[6] A dissent to this majority opinion cites Black's Law Dictionary when defining the terms "entice," "induce," "persuade," "seduce," "seduction," and "solicit" as authority to prosecute criminal attempt, or attempted child exploitation, as a violation of the substantive offense set forth in the exploitation statute. However, the Legislature defines statutory criminal offenses and their elements. Section 97-5-33 defining the offense of child exploitation does not include attempted violations as a violation of that statute. Therefore, attempted violations of that criminal offense lie under the general attempt statute, Mississippi Code Annotated section 97-1-7 (Rev.2006). The general attempt statute includes a statutory definition for criminal attempt. We heed the principle of strict construction of criminal penal statutes.
[7] See United States v. Williams, 553 U.S. 285, 300, 128 S.Ct. 1830, 1843, 170 L.Ed.2d 650 (2008) (Factual impossibility is not a defense to attempt.); Nche v. United States, 526 A.2d 23, 24 (D.C.1987) (Inability to pay provides no defense to soliciting a prostitute for se.); ALI, Model Penal Code § 5.01, cmt, p. 307 (in attempt prosecutions "the defendant's conduct should be measured according to the circumstances as he believes them to be, rather than the circumstances as they may have existed in fact").
[8] Section 97-1-7 provides the following guidance for sentencing a defendant guilty of attempt: "if the offense attempted be punishable by imprisonment in the penitentiary, or by fine and imprisonment in the county jail, then the attempt to commit such offense shall be punished for a period or for an amount not greater than is prescribed for the actual commission of the offense so attempted."
[9] Tony Holifield, an investigator for the Greene County Sheriff's Department, testified that he was familiar with Shaffer's voice, listened to the audio recordings of the phone calls between Shaffer and "Chloe," and testified that he recognized Shaffer's voice on the recordings. Additionally, Donnie Dobbs, a detective sergeant with the Biloxi Police Department who supervises the cyber crime unit, acts as the department's computer forensic examiner, and conducts data recoveries on a hard drive, testified that he found references to a screen name "cowboy39461," and "orlandoluvsme2" ("Chloe"), on Shaffer's computer hard drive.
[10] The record reflects that no discovery issues regarding the chat logs were raised at the trial level. Shaffer had the opportunity to cross-examine Doolittle about the relevance of any of the chat logs as well as offer any additional evidence that he deemed relevant to his defense.
[11] Shaffer failed to present this Court or the circuit court with the transcript of those proceedings, so the record does not contain the actual statements made by the judge.
[12] Shaffer's indictment charged him with the exploitation of a child under section 97-5-33. The indictment specifically cites to that particular section of the Mississippi Code, and the indictment tracks the exact language used in that statute, stating that Shaffer:

... on or between June 29, 2006, through July 9, 2006, did unlawfully, willfully, and feloniously through the use of messaging sent via computer and cellular telephone knowingly entice, induce, persuade, solicit, advise, coerce, or order a child under the age of 18 years, to meet with him for the purpose of engaging in sexually explicit conduct, contrary to the form of the statute in such cases....
Shaffer claims that the same conduct alleged in the indictment also violates section 97-5-27(3)(a), which states:
A person is guilty of computer luring when:
(i) Knowing the character and content of any communication of sexually oriented material, he intentionally uses any computer communication system allowing the input, output, examination or transfer of computer data or computer programs from one computer to another, to initiate or engage in such communication with a person under the age of eighteen (18); and
(ii) By means of such communication he importunes, invites or induces a person under the age of eighteen (18) years to engage in sexual intercourse, deviant sexual intercourse or sexual contact with him, or to engage in a sexual performance, obscene sexual performance or sexual conduct for his benefit.
Shaffer states that his sexually explicit chats to "Chloe" constitute sexually oriented material. He asserts that he should, therefore, have been sentenced under computer luring, an offense that carries a lesser penalty than the indicted offense.
[13] See Duke v. State, 340 So.2d 727, 730 (Miss. 1976) ("[W]hen the impossibility grows out of extraneous facts not within control of the party, impossibility is not a defense."); see also United States v. Farner, 251 F.3d 510, 512-13 (5th Cir.2001) (impossibility because "minor" was really adult federal agent posing as a minor on the Internet did not relieve defendant of criminal liability); United States v. Johnson, 376 F.3d 689, 694 (7th Cir.2004) (actual minor victim not required to support a conviction for producing child pornography in violation of 18 U.S.C. § 2251); United States v. Root, 296 F.3d 1222 (11th Cir.2002) (actual minor victim not required for attempted inducement conviction).
[14] See, e.g., United States v. Rivera-Sola, 713 F.2d 866, 869 (1st Cir.1983).
[15] I acknowledge that, effective July 1, 2007, the Legislature may have cured the problem in Shaffer's case when it amended section 97-5-33(8) to include the language regarding an "undercover operative or law enforcement officer pos[ing] as a child." Miss.Code Ann. § 97-5-33(8) (Supp.2009). I further acknowledge, as does the majority, that pursuant to Article I, Section 9 of the United States Constitution and Article 3, Section 16 of the Mississippi Constitution, such amendment cannot benefit the State to the detriment of Shaffer based on the constitutional prohibition against punishing an accused based on an ex post facto law.